UNITED STATES BUNG MANUF'G Co. *v.* INDEPENDENT BUNG & BUSHING Co.

*(Circuit Court, S. D. New York.* May 23, 1887.

1. PATENTS FOR INVENTIONS—IMPROVEMENTS IN BUNGS FOR CASKS—PATENTABLE NOVELTY.

Reissued letters patent No. 5,937 were granted June 30, 1874, to Rafael Pentlarge, for an improvement in bungs for casks; the invention consisting in boring a hole from either side nearly through an ordinary wooden bung, the hole being filled by a tightly-fitting wooden plug. In tapping, the vent-plug is driven into this hole, the solid portion of the bung is broken off, and, with the wooden plug, passes into the cask. The object of the invention was to provide an easy method of inserting the vent-plug without permitting the gases generated by fermentation to escape. The proof showed that a prior patent was granted to one Kirby for a bung with a hole bored entirely through it, with a plug fitted tightly therein, which, in venting, was forced into the cask; and a prior English patent was also granted to one Taylor for a similar device, the hole being conical in shape and, like the patent in suit, being bored partly through the bung. *Held,* that the patent in question was wanting in patentable novelty, and a bill to restrain infringement of the same must be dismissed.

2. SAME.

Reissued letters patent No. 10,175 were granted August 1, 1882, to Frederick Pentlarge and Philipp Hirsch, also for an improvement in bungs; the

bung being like that in the above-mentioned patent, except that the hole is bored from both sides, a thin web of wood being left between the holes in the interior of the bung, and the re-enforcing plug dispensed with.   *Held* to be equally wanting in patentable novelty, in the light of the said prior state of the art.

3. SAME.

Letters patent No. 203,316 were granted May 7, 1878, to George Borst, for another improvement in bungs; the bung being similar to those above mentioned, except that a cutting tool is used, which. instead of a hole, makes a circular incision, extending partially through the bung, the center core of the wood being left intact.   It appeared that this method was described in a German paper in 1877.   *Held* to be equally wanting in patentable novelty.

4. SAME—FOREIGN PATENT.

Where a foreign patent describes a device which is covered by a later patent of the United States, or describes it so nearly that it is made patent to the public, and an ordinary mechanic can make the change from one to the other, the latter patent cannot be sustained.

In Equity.

*Henry Brodhead,* for complainants.

*Preston Stevenson,* for defendants.

COXE, J.   The complainants are the owners of three several letters patent for improvements in bungs for casks.   The first patent, reissue No. 5,937, was granted to Rafael Pentlarge, June 30, 1874.   The alleged invention consists in boring a hole from either side nearly through an ordinary wooden bung, the hole being filled by a tightly-fitting wooden plug.   In tapping, the vent-plug is driven into this hole, the solid portion of the bung is broken off, and, with the wooden plug, passes into the cask.   The object is to provide an easy method of inserting the vent-plug, without permitting the gases generated by fermentation to escape. The claims are:

"(1) The bung, A, provided with the hole, $a$, and having a solid portion, $d$, opposite thereto, substantially as specified.   (2) The plug, B, in combination with the bung, A, having a hole extending partly through it, substantially as and for the purpose set forth."

The second patent, reissue No. 10,175, was granted to Frederick Pentlarge and Philipp Hirsch, August 1, 1882.   The bung here described is like that of the previous patent, except that the hole is bored from both sides.   A thin web of wood is thus left between the two holes in the interior of the bung.   The re-enforcing plug is dispensed with.   The claims are:

"(1) In a vent-bung, made and constructed substantially as described, a transverse web, having recesses formed, respectively, upon its inner and outer faces.   (2) In a vent-bung, made and constructed substantially as described in Figs. 1 and 2, the recess, C, on one side of the bung, of greater size than the recess, B, on the other side of the bung."

The third patent, No. 203,316, was granted to George Borst, May 7, 1878.   This bung is similar to the preceding ones, except that a cutting tool is used, which, instead of a hole, makes a groove or circular incision, the center core of wood being left intact.   The claims are:

"(1) A vent-bung having, upon one or both of its faces, a groove or incision, extending partially through the same, and surrounding the portion to be

removed, substantially as and for the purpose set forth. (2) A vent-bung having formed, upon one of its faces, a cavity, and upon the opposite face a groove or incision, surrounding the portion to be removed, substantially as and for the purpose specified."

Infringement is admitted, but the defendants insist that the patents are invalid for lack of novelty and invention. Before proceeding to this defense, it is well to have in mind what the courts have said regarding the patents in question, which, upon several occasions, have been the subjects of judicial examination.

In 1878, Judge BENEDICT, in refusing a preliminary injunction in an action by Frederick Pentlarge against Rafael Pentlarge, decided that the patent to Rafael, No. 5,937, is broad enough to include the devices described in the Pentlarge-Hirsch patent, No. 10,175, and the patent to Borst, No. 203,316, and is not limited to a bung with a web on one face, but covers every form of bung in which a solid web is left opposite the plug-hole. He further held that the distinctive feature of the first claim is "the transverse web of solid wood, left intact and opposite the plug-hole, for the purpose of preventing the exit of gas or fluid, and yet thin enough to permit of its easily giving way on being struck;" that changing the locality of the web from the face to the center of the bung, whether by boring or by a circular cut, is a mere change of form, and nothing more. Subsequently, in an action by Rafael Pentlarge against Frederick Pentlarge and another, the same patents being involved, the same judge held that the defendants infringed, and ordered them under injunction.

In 1880, in a suit between Rafael Pentlarge and the New York Bung & Bushing Company, Judge BLATCHFORD decided that the defendants were at liberty to make a bung with a hole in it, and a solid portion opposite to the hole, for, in so doing, they made simply what is described and shown in the English patent to Taylor, *infra*. The fact that the hole shown in the Taylor patent is flaring he considered unimportant.

In 1884, Frederick Pentlarge commenced an action, under section 4918 of the Revised Statutes, praying that the patent of George Borst, No. 203,316, be declared void. Judge WHEELER dismissed the bill, holding that the patents were each valid for the difference only between the bungs described in them and those in existence before, and that the patents did not interfere. The patents to Taylor and Rafael Pentlarge were in evidence in that cause. *Pentlarge* v. *New York Bung & B. Co.*, 20 Fed. Rep. 314.

Coming, now, to the defense of lack of patentable novelty, it is necessary to understand, at the outset, what was known in the art before the alleged inventions were conceived. In 1871 a patent was granted to Josiah Kirby for a wooden bung, with a cylindrical hole or vent bored entirely through it. The hole was filled with a tightly-fitting plug; its grain running at right angles to its axis. This plug, in venting, was forced into the cask. In February, 1865, an English patent was sealed to William Rowland Taylor. In his specification he declares: "I propose to employ shives or bungs having therein a distinct peg-hole of

metal or wood, to contain a cork or peg, which may be displaced by the pressure of the ordinary loose peg, which will then fill the hole." Again he says, in explanation of the drawings: "Figure 9 shows a shive, having a hole made not quite through it, so as to leave a thickness of wood, which can be pressed into the cask by the common wooden vent-peg."

The only possible difference between the Taylor bung, as shown in Fig. 9, and the Rafael Pentlarge bung, as shown in Fig. 1, is that the hole of the former is conical, and is smaller than that of the latter; although Taylor, in describing Fig. 1 of his drawings, says that the peg-hole may be "either slightly tapered, or of equal diameter throughout."

Let it be assumed that he who first bored a vent-hole in a wooden bung, and stopped boring before he had gone entirely through, so that the hole was completed by being hammered out, instead of being bored out, is entitled to rank as an inventor. The question here is: Was it invention to change a conical hole to a cylindrical hole; to take Taylor's bung and cut out the peg-hole, so that its diameter was equal at top and bottom? It is thought not. And especially so, in view of the fact that Taylor had shown the cylindrical hole, and Kirby had shown it as applied to bungs. It can hardly be said that the mechanic who, with the Taylor and Kirby structures before him, takes the stock and bit used by Kirby, and with it makes the hole in the Taylor bung larger at the bottom, so that it will hold the Kirby plug, has made an appreciable draft upon his mental faculties. To adopt, *mutatis mutandis*, the language of the supreme court in *Heald* v. *Rice*, 104 U. S. 737, 755: "Could not the owners of the Kirby patent unite their device with the Taylor structure, and work them together, in defiance of a claim for the combination? To ask the question is to answer it."

It is not invention to make a small hole a big hole, or a conical hole a cylindrical hole, especially when no new result, and no appreciable improvement on the old method, is accomplished. It is a mere change of form, involving, not the action of the mind, but a substitution of one tool for another. If such slight and unimportant changes are sufficient, the next applicant has only to make the vent hole elliptical or octagonal, or bore a round hole obliquely, or make it a little larger at the bottom than at the top, and thus secure a patent. The law was never intended to protect such superlative and palpable trivialities. The recent decisions of the supreme court upon this question show no disposition to recede from the rule which elevates patents above the plane of the frivolous and the commonplace. *Thatcher Heating Co.* v. *Burtis*, 39 O. G. 587, 7 Sup. Ct. Rep. 1034; *Gardner* v. *Herz*, 118 U. S. 180, 6 Sup. Ct. Rep. 1027; *Yale Lock, etc., Co.* v. *Greenleaf*, 117 U. S. 554, 6 Sup. Ct. Rep. 846; *Pomace Holder Co.* v. *Ferguson*, 119 U. S. 335, 7 Sup. Ct. Rep. 382, and cases cited.

In reaching the conclusion that there is no patentable novelty in the Rafael Pentlarge bung, the court has not overlooked the argument advanced by the complainants that the Taylor patent should be laid out of view in considering the defense of lack of invention. It is insisted that the Taylor patent does not disclose an exact anticipation; that the Pent-

large structure is not covered by Taylor's claims, or "patented" to him; and that, under the provisions of section 4886 of the Revised Statutes, the English patent cannot be considered at all. It is thought, however, that this contention is not well founded. If a prior foreign patent describes the device covered by a patent of the United States, or describes it so nearly that it is made patent to the public, and the clumsiest mechanic can readily make the change from one to the other, the latter patent cannot be sustained. Any other rule would promote inconsistency and fraud. *Cohn* v. *United States Corset Co.*, 93 U. S. 366; *Spill* v. *Celluloid, etc., Co.*, 21 Fed. Rep. 631; *Florsheim* v. *Schilling*, 26 Fed. Rep. 256; Walk. Pat. § 55.

The foregoing considerations dispose also of the two remaining patents. In the light of what was known at the date of their patent, it was surely no invention for Frederick Pentlarge and Philipp Hirsch to bore from both sides of the bung, thus locating the web at the center, or nearer the center than before. Neither is invention shown in the Borst patent, in view of the prior art, and also in view of the article in the German paper of February, 1877, which clearly presents the idea of making the circular cut, and leaving the core, rather than boring out the hole. The core is plainly an equivalent for the plug of Rafael Pentlarge. The learned judge who decided *Pentlarge* v. *New York Bung & B. Co.*, 20 Fed. Rep. 314, did not have the state of the art before him, and simply determined a question of interference, under the statute, between the two patents in controversy. If the light disclosed by this record had been thrown upon that case, there is little doubt that he would have reached a different conclusion. No language can be employed which more appropriately characterizes the results reached by the patentees than that of the supreme court in *Smith* v. *Nichols*, 21 Wall. 112, 119:

"A mere carrying forward, or new or more extended application, of the original thought; a change only in form, proportions, or degree; the substitution of equivalents, doing substantially the same thing, in the same way, by substantially the same means, with better results,—is not such invention as will sustain a patent."

There should be a decree dismissing the bill.