## WAGENHORST v. HYDRAULIC STEEL CO. et al.

Circuit Court of Appeals, Sixth Circuit.
June 20, 1928.

No. 4804.

1. **Patents** ⬦119—**Single patent may contain generic claims and specific claim to one form of concrete embodiment.**

A single patent may contain the generic and relatively generic claims and specific claim to one form only of the concrete embodiment.

2. **Patents** ⬦109—**Where application presents specific claims to alternative forms, amendment must confine claims to one form, with divisional applications filed for other forms.**

Where patent application presents specific claims to alternative forms, applicant must amend by confining his claims in that application to one form, and by filing divisional application for other form, and such division involves no new matter, and is nothing but portion of required amendment.

3. **Patents** ⬦109—**New matter in divisional application or amendment must be supported by new affidavit, and application takes filing date only from that embodiment.**

If new matter is embodied either in divisional application or an amendment, new matter must be supported by new affidavit, and will take its filing date only from that embodiment, and, as to anything which is not new matter, application, whether parent or divisional, continues to have benefit of first filing date.

4. **Patents** ⬦109—**Divisional application is limited to invention disclosed by original, save instances of permitted new matter.**

There is no right to file a divisional application, except for an invention which is disclosed by the original, save instances of permitted new matter.

5. **Patents** ⬦328—**1,509,382, for demountable rim for automobile wheels, held not invalid for delay in filing divisional application on which it was based, in view of complete disclosure by original application.**

Wagenhorst patent, No. 1,509,382, for demountable rim for automobile wheels, based on a divisional application, *held* not invalid for delay in filing divisional application, since patentee was entitled to make divisional application and carry his invention back to date of first filing, in view of fact that disclosure was complete by first drawing of invention and by general description, which was given, and no additional disclosure as to construction and operation of device was made by divisional application.

6. **Patents** ⬦90(5)—**That which is disclosed in application duly filed is reduction to practice, and evidences completed invention at such date, even though not then claimed.**

What is disclosed in a patent application duly filed is a reduction to practice, and evidences completed invention at that date, even though it was not then claimed.

7. **Patents** ⬦99—**What clearly appears by drawing may be sufficient disclosure, though not fully described.**

What clearly appears by a drawing of an invention, though not fully described, may be a sufficient disclosure.

8. **Patents** ⬦109—**Inserting by amendment fuller description of what completely appears by original drawing is not insertion of new matter.**

To insert by amendment a fuller description of what completely appears by the original drawing of an invention and was intelligently described is not to insert new matter.

9. **Patents** ⬦99—**Where construction and operation are obvious, applicant need not describe advantages or know them.**

Where the construction and mechanical operation of an invention are obvious, it is not necessary that the applicant should describe the advantages or should know them.

10. Patents ⚖⇒109—That applicant did not realize claims were inadequate until seeing competing device does not preclude amendment of claim, so long as applicant does not depart from or unduly enlarge invention shown by specifications and drawings.

So long as patent applicant does not depart from or unduly enlarge invention actually shown by his specifications and drawings, he may at any time amend his claim, so as to secure his real invention, and it is not controlling that he did not realize his claims were inadequate until he saw competing device.

11. Patents ⚖⇒23, 24—Making in one piece what was formerly in two, or vice versa, is not generally invention.

Generally it is not invention to make in one piece what had formerly been in two, or to make in two pieces what had formerly been in one.

12. Patents ⚖⇒328—1,509,382, for demountable rim for automobile wheels, held invalid for lack of invention.

Wagenhorst patent, No. 1,509,382, for demountable rim for automobile wheels, *held* invalid for lack of invention.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Patent infringement by James H. Wagenhorst against the Hydraulic Steel Company and others. Decree dismissing bill, and plaintiff appeals. Affirmed.

C. B. Des Jardins and Melville Church, both of Washington, D. C., for appellant.

John F. Oberlin, of Cleveland, Ohio (Baker, Hostetler & Sidlo, Fay, Oberlin & Fay, and Jos. C. Hostetler, all of Cleveland, Ohio, on the brief), for appellees.

Before DENISON and MOORMAN, Circuit Judges, and HICKS, District Judge.

DENISON, Circuit Judge. Infringement suit on the Wagenhorst patent, No. 1,509,-382, issued September 23, 1924, upon a demountable rim for automobile wheels. The patent was based upon a divisional application, filed December 21, 1923, in the course of prosecuting an original application, filed April 2, 1921. The District Court dismissed the bill because he thought the patent invalid, both for lack of invention and because of delay in filing the divisional application.

[1-3] Since, if the latter reason were sound, the case might well be affirmed on that ground without attention to the former reason, we think it appropriate to consider the effect of this delay. There is no particular statutory regulation as to what may be contained in a single patent application; the inference that one application should be confined to one invention is fair enough, but this does not affect the difficulty of distinguishing be-tween what are, and what are not, parts of the same invention. Any rule on this subject must be largely arbitrary and of convenience. Such rules as have been established do not seem entirely consistent. Method or process, and machine or apparatus, and product or article of manufacture, may be separate inventions, and yet they often have been allowed to be united in one patent. Where a somewhat complex machine or structure includes details of part A and details of part B, and both need not always be embodied, there is no inherent reason why there might not be in one patent a generic claim covering both and specific claims respectively to the two alternative forms; but the practice is firmly established that a single patent may contain the generic and relatively generic claims and a specific claim to one form only of the concrete embodiment.

Accordingly, where the application presents specific claims to alternative forms, the applicant is required to amend by confining his claims in that application to one form and by filing a divisional application for the other form if he wishes to insist upon it. Such a division involves no new matter, and is nothing but a portion of the required amendment. The applicant may retain the generic claim and specific claim A in the parent application and file the divisional application for specific claim B, or he may do the converse, as he prefers. A divisional application is a form of an amendment, and we see no basis for distinction in the principles applicable to a divisional application and to any other kind of an amendment. If what is technically new matter is embodied in either, that new matter must be supported by a new affidavit, and will take its filing date only from that embodiment. As to anything which is not new matter, the application, whether parent or divisional, continues to have the benefit of the first filing date.[1]

The patent statute prescribes that the right to a patent is abandoned and the patent is invalid if the patentee, even though the first inventor, has delayed his application until two years after the invention has been put into public use or has been described in any printed application. By analogy to this statutory rule, the Supreme Court long ago held that a delay of two years in filing a reissue application, for the purpose of

---

[1] Chapman v. Wintroath, infra, is not inconsistent with characterizing a division as an amendment. It is only held to be not such an amendment as to be governed by the analogy of the one-year statute, so that a limitation running from the last action in the case may be applied to run from action in another case.

broadening an issued patent, would be regarded as a fatal delay; and it is here immaterial whether the fatality of the delay was found in abandonment or in estoppel by the dedication to the public of what was shown but not claimed in the original. In Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, we find express consideration of a divisional application. It appeared that the applicant had shown but not claimed specific form A. Some one else filed a junior application, showing and claiming form A. Whether by oversight in the Patent Office or because of the then existing rules, no interference was declared, and the patent issued to the junior applicant. Twenty months thereafter the senior applicant filed a divisional application claiming the same specific form, and an interference was declared with the junior applicant, who had become the patentee. It was held that, by analogy, the two-year rule of the statute and as to reissues should be applied to divisional applications (at least to this one), but that since, when the senior applicant filed the divisional application, two years had not expired from the time when the junior applicant, by the publication of his patent, disclosed the invention to the public, the senior's right had not been lost, and he was entitled to his patent upon his divisional application as against the junior, who had become the patentee. It would not be inconsistent with the result reached to date the two-year period from the time when the senior applicant first learned in any way that the junior was claiming the invention as his; but that was not involved. The opinion has been sometimes thought to indicate that the deadly two-year period begins to run from the time of filing the original application; but not only does a careful reading show that this is not said, but it is plain that, if such were the rule, the decision of the case must have gone the other way, for more than two years had expired after the original application was filed before the date of the divisional one.

Even the broad inference that the divisional application must be filed within two years after a public use or publication is criticized in American Co. v. Prosperity Co. (C. C. A. 2) 295 F. 819, and the force of this criticism is apparently conceded in Webster Co. v. Splitdorf Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792. This Webster-Splitdorf Case is much relied upon to support the judgment below; but we think it does not. There the original Kane application was filed in 1910, containing claims which are not stated, but which evidently were relatively narrow. Upon this a patent issued in 1916, also with claims so limited that they were not regarded as vital. Pending this application, in 1914, a patent issued to one Milton, containing claims, doubtless also limited, which Kane thought could be predicated on his disclosure. He therefore, in 1914, filed a divisional application, went into interference with Milton, and succeeded in having these claims awarded to him. They were doubtless among the claims of his patent issued in 1916; but this divisional application and its result do not seem to have been regarded as of any importance. In 1913 a patent issued to Podlesaks, containing claims which also Kane thought he could make, although it would seem that he did not observe this Podlesaks patent until its reissue in 1915. He then filed another divisional application, copying these Podlesaks claims, and went into an interference, in which Kane was defeated. These Podlesaks claims were also apparently not broad enough to be important in the later controversy. Thereupon, in June, 1918, Kane, by way of amendment to the divisional application of 1915, for the first time claimed the invention broadly enough by claims 7 and 8 to cover the Splitdorf construction; and these claims, necessarily broader than those which had been awarded to Podlesaks, were allowed by the Patent Office and included in the patent in suit. The Supreme Court held that, considering all these circumstances, these two claims were invalid.

It is not clear from the opinion what result would have been reached, if based upon only a part of the circumstances. The summation at the end of the opinion says that the two-year limit under discussion applies to divisional applications. No doubt it does; but this is not to say that it applies to them in any other or different way than it would apply to a parent application, where the right to make claims has been lost by laches; the fact that they appear in a so-called divisional application, later filed, does not help them. From the recitals and reasoning of the opinion, we are unable to see that the fact that the amendment of 1918 was presented in a divisional application, instead of an original application, was of any importance to the result reached. The long delay which elapsed between the original and the divisional was important, not because it was the interval between these two applications, but because it extended so long after the 1913 public disclosure. If the original application of 1910 had not matured into a patent in 1916, but had continued pending, and the amendment in 1918 had been offered in that

original application, and the facts had been otherwise the same, we see nothing in the opinion, and no reason occurs to us, which would indicate a different result. In other words, claims 7 and 8 were invalid because, in an effort to broaden any previous statements of the invention, they were first presented by an amendment offered five years after their subject-matter had been disclosed to the public by the Podlesaks patent; and such an effort to broaden the claim of invention was, by analogy to the reissue rule, barred by laches, estoppel, and intervening rights. In the present case the divisional application was filed promptly after the intervening device appeared, and the Webster Case does not apply.

[4, 5] There is no right to file a divisional application, except for an invention which is disclosed by the original (save instances of permitted "new matter" not here involved). In the original Wagenhorst application he described generally the construction of a demountable rim and its attachment upon a fixed rim, which, in most of the forms shown, was by means of a bead rolled or cast upon the radially inner surface of the demountable rim, which bead had its front face in a plane at right angles to the rim surface, and had its radially central face of a beveled form. The fixed rim was in channel form, having legs at its front and rear edges; the front leg being adapted to the beveled inner face of the bead. An attaching lug fitted closely at its upper end in the angle made by the bead and rim, and at its lower end had an opening for receiving the rim bolt, so that tightening the nut on this rim bolt forced the lug and with it the beaded rim to the rear, and caused the beveled face of the bead to ride upon and finally be held firmly upon the front leg of the fixed rim. The drawing had six figures. Figure 1 and 2 showed varying forms of the two rims. Figure 3 showed a different form of demountable rim, with the parts held in position by a separable clamping lug which bore against the front face of the bead. Figure 4, here reproduced, shows a slightly different form of the de-

Fig. 4

mountable rim, and the clamping lug is attached thereto by riveting. Figure 5 shows a form of separable clamping lug with a specifically different provision for the wedging contact with the fixed rim's front leg. Figure 6 shows still another form of the separable clamping lug and of the wedging action, effective upon the rear leg of the fixed rim.

He made five claims. Claim 2 was relatively generic, while claims 1 and 3 specified attached lugs and thus tied themselves to the form shown in Figure 4. Claim 4 called for the specific form of attaching clamp shown in Figure 5, and claim 5 for that shown in Figure 6. It is now suggested that the first three claims are confined to forms where the binding engagement of the demountable rim bead is only with the front leg of the fixed rim, and do not reach structures like defendant's, where there is engagement with both legs. They need not be so construed. Although the drawing did show a lack of contact with the rear leg, in five of the six figures, and these three claims call for contact with the front leg, yet whether there was also contact with the rear one would be upon the face of the claims immaterial; whether they should be confined to an exclusively front leg contact would be a matter of construction.

The first action was in September, 1921, by letter pointing out that, while claim 2 was generic, claims 1 and 3 were directed to Figures 1 to 4, inclusive, and claims 4 and 5 to Figures 5 and 6, respectively. It was stated that only a single form could be claimed specifically. Within the year, and in September, 1922, applicant amended by canceling claims 4 and 5 and making some other trifling changes. The next action, in February, 1923, was a complete rejection upon several patents cited. Before the next Patent Office action, but within the year, applicant amended the claims and also filed the divisional application, in which the important Figure 2 is a reproduction of Figure 4 of the original application, with no material change. The original application had not made a very particular description of Figure 4, but had said that it showed the form of the demountable tire carrying rim, having an inwardly projecting bead and provided with attached lugs. The demountable rim, as shown in all the figures, is described. It is further said that in Figure 4 the contacting faces of the bead and the front leg of the fixed rim are correspondingly inclined, and that the clamping lugs of Figure 4 are provided with openings for the rim bolts

whereby they may be compressed by the action of the nut. In the divisional application this figure was described more in detail, but, as to form and construction, nothing is mentioned which is not perfectly obvious to any one upon observation of the original Figure 4. The advantages of the specific construction are pointed out in the divisional application as they were not in the original, but as to the construction and operation of the device, there is no additional disclosure. What was added was only to point out that the weakness inherent in the riveting, as shown, was cured by the lug and bead contact, as shown. The disclosure was complete by the first drawing and by the general description which was given.

[6-9] We see no reason why, upon the face of the papers, Wagenhorst was not entitled to make this divisional application and to carry his invention back to the date of the first filing. It is now settled that what was disclosed in an application duly filed is a reduction to practice, and evidences a completed invention at that date, even though it was not then claimed. Milburn Co. v. Davis Co., 270 U. S. 390, 401, 46 S. Ct. 324, 70 L. Ed. 651. What clearly appears by a drawing though not fully described may be a sufficient disclosure. Loom v. Higgins, 105 U. S. 580, 594, 26 L. Ed. 1177; Keene v. New Idea Co. (C. C. A. 6) 231 F. 701, 708; Fulton Co. v. Bishop Co. (C. C. A. 6) 284 F. 774, 777. To insert by amendment a fuller description of what completely appears by the original drawing and was intelligibly described is not to insert new matter. Proudfit Co. v. Kalamazoo Co. (C. C. A.) 230 F. 120, 124; General Co. v. Cooper Co. (C. C. A. 6) 249 F. 61, 64; Kelsey Co. v. Universal Co. (C. C. A. 6) 296 F. 616, 618. Where the construction and mechanical operation are obvious, it is not necessary that the applicant should describe the advantages, or indeed should know them. Goshen Co. v. Bissell Co. (C. C. A. 6) 72 F. 67, 74; Cleveland Co. v. Detroit Co. (C. C. A. 6) 131 F. 853, 855.

[10] If, then, the two-year bar did not exist, and Wagenhorst has proved his reduction to practice as of April, 1921, the question remains whether an estoppel against making the claim or a sufficient case of laches appears in any other way. Continuously before and after April, 1921, Wagenhorst's licensee under an earlier patent was making in large quantities, for the Ford Company, demountable rims which had separable clamping lugs, and so did not involve the form shown in his Figure 4. In November, 1923,

Wagenhorst learned, from a manufacturer who was also making rims for Ford, that the Ford Company had expressed a preference for rims with attached lugs, and that this manufacturer had accordingly made drawings which were substantially identical with Wagenhorst's Figure 4, and was planning to make them for the Ford Company. Wagenhorst, recognizing this as like one of his own early constructions, found that it was embodied in this Figure 4, and that, while it would or might be protected by at least one claim in that application, if this claim were finally allowed and were generically construed, yet it was not specifically covered by any existing claim. He was doubtless advised that he could, by amendment, insert such specific claims in the pending application, but that by filing a separate divisional application he could avoid the delay involved in prosecuting the other and more generic claims and be more likely to get a patent promptly. He took both courses (later canceling these claims from the original), and we fail to see that he violated any legal principle or was guilty of any misconduct raising an estoppel. If this specific form involved invention, he knew that he had made it and reduced it to practice long before, and that he and not the later comer was entitled to the patent. Perhaps, if he had not seen the competing construction, he would not have made the specific claim; perhaps, in the regular prosecution of his application, he would; but, so long as the applicant does not depart from or unduly enlarge the invention actually shown by his specifications and drawings, he may at any time amend his claim, so as to secure his real invention; and it is not controlling that he did not realize his claims were inadequate until he saw the competing device. Cadillac Co. v. Austin (C. C. A. 6) 225 F. 983, 991, 992.

This review of the proceedings develops another reason why the Webster Case is not applicable. The action there condemned was a belated attempt to broaden the patent, as compared with the long existing claims, so as to gather in what others had done. The discussion of the reissue cases indicate that this feature of the Webster Case was thought of much, if not of controlling, importance. In the present case, this did not happen; at least, we cannot be sure that it did. It may be said, with some certainty as to original claim 2, and with some probability as to claims 1 and 3, that, if granted, they would have seemed to cover defendant's later structure, and might or might not have been construed in that way. The trouble was that

with that construction they went beyond the applicant's device and reached the prior art. Wagenhorst's amended divisional claim restricted his claimed invention to the specific form of its concrete embodiment. This is a very different thing from the enlargement in the Webster Case.

[11, 12] We have discussed the foregoing questions, because they are involved in the case and are of general importance. To the extent that the opinion below rested upon the view which it took of these matters, it cannot be sustained; but whether Wagenhorst made any real invention must also be decided. We think he did not. It was old to assemble a demountable rim with a bead seating upon the outer part of the fixed rim and with an attaching lug,—all not fairly distinguishable from Wagenhorst's form, excepting that the lug was separate from the demountable rim instead of being riveted thereto. When the parts of (e. g.) Baker were assembled and locked by the clamping nut, a cross-section of the device was not mechanically distinguishable from a similar section of Wagenhorst, except that one would show the lug as a separate piece and the other would show it permanently riveted to the rim. The co-operative function of the various parts, when the devices were in use, would be the same in each. It was old, also, to construct the bead wide enough (axially) and strong enough, so that it could receive directly the thrust of the clamping bolt. This form, in substance, embodied Wagenhorst's demountable rim and lug in one integral structure. If the bead of (e. g.) Holzapfel were divided into two parts, front and rear, by a radial cut extending up to the rim, we would find Wagenhorst's structure, except that rim and lug would be integral instead of being riveted together. It is not, broadly and usually, invention to make in one piece what had formerly been in two, or to make in two pieces what had formerly been in one. Standard Co. v. Caster Co. (C. C. A. 6) 113 F. 162, 166; Gould v. Cincinnati Co. (C. C. A. 6) 194 F. 680, 685, 686.

This case furnishes no exception to the rule, for Wagenhorst merely applied an elementary mechanical principle in a familiar way. Having decided, for reasons of economy in construction, to attach his lug to the rim by riveting rather than by welding, he observed that the limited space did not permit of the most efficient riveting, and that, when the rearward clamping force was applied to the lower end of the lug, it would tend to tilt, and, fulcruming at the shoulder below the rivets, would tend to pull the rivets out. Obviously it would be better with a brace behind it, which would make the fulcruming point farther away from the rim, and tend to transform the pull upon the rivets into a shear. He found this brace ready at hand in the existing bead structure, and the inner edge of the bead furnished the better fulcruming point. We do not see that this can be regarded as involving more than ordinary mechanical skill.

If this conclusion were in doubt, it would be confirmed by Wagenhorst's own conduct. The mechanical advantages of this construction, as just stated, were obvious. Wagenhorst was an inventor of large experience in this particular line and was represented by able solicitors. It is not to be doubted that they would have intended to claim every specific invention which they thought present. It did not occur to either of them that the construction shown in Figure 4 involved any invention in this specific respect. It was only when they saw it was about to be used in a competing device, and realized that, if they failed to secure their broader pending claims there would be no infringement, that they concluded there was specific invention in these details of the assembly, and decided to make the specific claim. We think their first conclusion was the right one.

For these reasons, the decree below is affirmed.