## HODDERSEN–BALLING v. LORENZ.
## SAME v. KUSSAT.
### Nos. 441, 442.

Circuit Court of Appeals, Second Circuit.
July 18, 1932.

Benedict S. Rosenfeld, of Brooklyn, N. Y. (John L. Ketcham, of New York City, of counsel), for appellant.

Sporborg & Connolly, of New York City (William D. Sporborg, of New York City, and Melville Ehrlich, of Port Chester, N. Y., of counsel), for appellees.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The patent in suit was issued to the plaintiff on November 18, 1924, upon an application filed May 27, 1922. It relates to a cooking utensil commonly known as a ham boiler. This is a receptacle for holding a boned ham and keeping it under resilient pressure while it is being cooked. Pressure is necessary to give firmness to the meat so that it may be properly sliced, particularly for serving in sandwiches, while a suitable conformation of the receptacle helps to mold the fat into a desirable shape and position, eliminating waste. One side of the ham is molded flat so that it may be set in a commercial slicing machine without constant adjustment. The specifications explain that in boilers of ordinary construction there is too much space around the knuckle end of the ham with consequent waste because in the process of cooking too much of the fat and skin accumulate at this end. The angular corners of the ordinary boiler also present a disadvantage by increasing the waste space and requiring more time to clean them. These difficulties the patentee obviates by eliminating the angular corners and conforming his receptacle more nearly to the shape of the ham, so that there is less opportunity for the fat and skin to be pressed toward the knuckle end and form a waste product. He makes the general contour of the vertical walls of the boiler somewhat pear-shaped, and provides a bottom wall

having a horizontal plane at the large end and an inclined plane at the smaller end, thus raising the knuckle end of the ham. The cover, the undersurface of which is flat and puts the ham under pressure, is adjustable and may be set at various angles to the bottom in order to conform to the shape of the ham. The plaintiff's expert described the invention as follows: "A. In my opinion the patent consists in the production of a boiler having the outline of the usual ham, together with the raised portion that lifts the narrow end of the ham, or what is known as the hock of the ham, up toward and near to the cover that goes on to the boiler, the purpose being two-fold, to constrict the area there so that the fatty substance cannot flow toward that end, and what I considered to be the major purpose to give to the upper side of the ham a flat or continuous surface, so that when it is put on the slicing board it is retained on the slicing board throughout without adjustment."

The claims in issue are Nos. 8, 11, 12, 13, and 14. It is conceded that the four claims last mentioned are very much the same, and it will suffice to quote claim 11 as typical of this group. Claim 8 will be considered separately.

Claim 11 reads as follows: "A ham boiler comprising a receptacle having opposite vertical walls of substantially the same height, and a bottom wall having a horizontal portion and an inclined portion joined to one of said vertical walls above the bottom thereof."

■ Each of the defendants is charged as a contributory infringer in that Kussat, as the maker, and Lorenz, as the seller, distributed a metal insert, known in the trade as a "filler," intended to be assembled with an old type of boiler so as to constitute a false bottom in the form of an inclined plane at the narrow end of the boiler. The court below held claims 11 to 14 invalid because of anticipation.

■ With this conclusion we agree. The prior domestic patents need not be discussed, as the better references are three French patents. These clearly disclose pressure ham boilers which possess all the elements called for by claim 11. The patent to Aubert, No. 471,084, published October 13, 1914, shows a rectangular receptacle the bottom of which has a raised incline at one end. Plaintiff's expert admitted that it differed only in degree from the inclined bottom of the patent in suit. The patent to Pavart,

No. 449,376, published February 25, 1913, shows in figure 1 one end of the boiler shaped to fit the hock of the ham, and in figure 4 shows the use of removable pieces to make a false bottom and mold the ham into the shape desired. The patent to Le Bourhis, No. 465,708 published April 23, 1914, discloses that the receptacle "is provided with mobile metal plates, of the most different forms, which conjointly with the counter-plate give to the mass the desired shape." Figure 1 shows an accessory plate which is identically like the filler with which the defendants are alleged to infringe, except that the latter has a straight incline while Le Bourhis shows a slightly curved incline. Making integral with the bottom the plate which Le Bourhis shows as removable would not amount to invention. Cordley v. Richardson Corp. (D. C.) 278 F. 683, 685, affirmed 280 F. 515 (C. C. A. 2); Wagenhorst v. Hydraulic Steel Co., 27 F. (2d) 27, 32 (C. C. A. 6). Nor would it require inventive genius to give a straight face to his slightly curved incline. Slight changes in shape which produce no change in function are not patentable. Gleason v. Dosch (C. C. P. A.) 39 F.(2d) 687, 689. Against these French patents the plaintiff urges that a foreign patent is available as an anticipation only for what it clearly and definitely expresses and that none of those relied upon mentions the conservation or distribution of fat as the inventor's object. It is true that to be an anticipation the disclosure of a prior patent, even a domestic patent, must be clear, and we may assume for present purposes that the rule must be more strictly applied to foreign than to domestic patents. Cf. Trussell Mfg. Co. v. Wilson-Jones Co., 50 F.(2d) 1027, 1029 (C. C. A. 2). Nevertheless, if the descriptions and drawings of a foreign patent disclose the invention in terms so full and clear as to enable a person skilled in the art to practice the invention without making experiments, then it will be a complete anticipation. In re Crowell (C. C. P. A.) 39 F.(2d) 681, 683; Permutit Co. v. Harvey Laundry Co., 279 F. 713, 718 (C. C. A. 2); U. S. Bung Mfg. Co. v. Independent B. & B. Co., 31 F. 76, 80 (C. C. S. D. N. Y.). Under this test we entertain no doubt that claims 11 to 14, inclusive, are invalid.

■ Claim 8 of the patent in suit calls for "A ham boiler comprising a receptacle having a bottom wall and upright side walls having rounded or curved corners of increased thickness, an upwardly inclined

bottom portion, a cover, and means for supporting it, and means for connecting said supporting means to the cover at a constant angle thereto."

The court below found it unnecessary to pass upon the validity of this claim, for the reason that it was held not to be infringed. We concur in this disposition of the issue.

As already stated, the alleged infringement consists in using an old type of boiler together with the inclined plane, or filler, made and sold by the defendants. This old type boiler was disclosed and claimed under patent No. 1,272,883, granted to H. Adelmann July 16, 1918. It is conceded that the cover of this boiler differs from that described in the patent in suit, but the plaintiff contends that he is entitled to protection against the use of it in combination with the other elements of claim 8 on the doctrine of equivalents. This contention cannot prevail. Plaintiff's patent discloses a cover, means for supporting it (the handle lever 8) and "means for connecting said supporting means to the cover at a constant angle thereto." The handle lever is connected at the larger end of the boiler to springs carried by the body of the boiler, and is so connected with the cover that "there is a greater distance between the cover and the handle lever adjacent to one end than there is adjacent to the other" (page 2, l. 100). The result is that when the handle lever is pressed down and locked for operation the cover is tilted downwardly toward the upwardly inclined portion of the bottom and thus narrows the space at the hock end of the ham (page 2, ls. 91–97). The patent also emphasizes that "the springs are carried by the body and not by the cover," and points out certain supposed advantages in this construction (page 3, ls. 19–41). In the alleged infringing device the cover carries the springs, and in operation either end may be tilted toward the bottom of the boiler. Since the patentee has expressly differentiated the old type of cover which itself carries the springs, and has specified that the handle lever shall be so connected with the cover as to tilt it downwardly at the narrow end, it would seem strange indeed if he could claim as an equivalent a cover which lacks these characteristics. Moreover there is no testimony in the record of similarity of operation between the cover of the alleged infringement and the cover described in the patent. Infringement of claim 8 was not proved.

Decrees affirmed.