**MASTERCRAFTERS CLOCK & RADIO CO., an Illinois corporation, Plaintiff,**

v.

**UNITED METAL GOODS MFG. CO., Inc., a New York corporation, and United Clock Corp., a New York corporation, Defendants.**

**No. C–15738.**

United States District Court
E. D. New York.

Feb. 2, 1956.

Clarence E. Threedy, Edward C. Threedy, Chicago, Ill., and Harry Meisnere, New York City, for plaintiff.

Alexander Mencher, New York City, and Aaron F. Goldstein, Brooklyn, N. Y., for defendants.

BYERS, District Judge.

This is a patent suit involving the customary issues and in addition, the asserted defense that Claim 9—the only one in suit—is invalid on the ground of intervening defendants' rights.

The patent was issued to the plaintiff's assignor Hancock, on May 10, 1955, on application filed May 19, 1954. It has to do with an ornamental adjunct to a clock for use in the home, which is part of the same structure that contains the clock.

The ornamental aspect being the representation of a burning log fire, the apparent combustion of which seems to produce flames and smoke and, in some models, sparks. Of course the simulated fireplace is in miniature and is proportioned to the dial of the clock.

The asserted patentable invention is a combination of elements, which taken to-

gether are said to constitute a new and useful improvement in a simulated fireplace.

As one looks at the structure he observes a miniature log or logs supported by andirons; obviously they are not part of the disclosure of the patent. The apparent burning of those logs is an illusion resulting from the functioning of the said combination, namely:

The rotation of a horizontal cyclinder called a drum, which is apparently metallic as to its surface and which reflects light from an electric light bulb disposed above the drum. These two elements are in the rear of those about to be described, and are invisible of course from the front or from the rear (unless the back is opened for mechanical access). The drum is at about the level of the log, and is spaced close enough to partly occupy a space in one of two parallel vertical elements which are back of the log. The relation of the light bulb and the drum, to the latter is shown in fig. 3 of the patent.

It will be observed that the vertical front wall of the simulated fireplace could be likened to an enclosing mantel, within which is to be observed the simulated fireplace as a whole.

The apparent back of the fireplace is a vertical opaque wall, of simulated brick-work construction containing an irregular opening, the top of which extends about halfway up that wall, and which at its base is wide enough to occupy about half the mid-horizontal width.

Immediately in front of that opaque wall and parallel to it, is what is called an extending plate of about the same height, the upper portion of which is transparent and the lower translucent. The dimension of the spacing between it and the opaque wall is not stated.

The light reflected from the drum penetrates the opening in the opaque wall, and is shown through the translucent portion of the extending plate. The rotation of the drum creates changing reflected light effects when viewed from the front through the extending plate; they are caused by the irregular depressions on the surface of the drum of different colors.

The drum is rotated upward and to the rear, by connection with the mechanism of the clock; the light rays from the light bulb are thus intersected and reflected upon the translucent part of the extending plate, as above stated.

The defendant's structure is identical with that of the plaintiff except in two unimportant respects to be explained, so that the question of infringement admits of little or no discussion.

With commendable efficiency, counsel have stipulated the essential facts concerning the defendant's structure as compared with that of the plaintiff's, and for convenience Claim 9 has been analyzed into its component parts; the stipulation clearly indicates the respects in which the defendant's structure is said not to correspond to that of the plaintiff's, namely:

In the analysis of Claim 9 as explained by the plaintiff, the patent drawing figure 12 designates "a hollow base portion."

The claim refers to a hollow base portion (12) which by reference to the patent drawing figure 1 will be seen to constitute that which has been above described as resembling an enclosing mantel. That expression was used because the plaintiff's structure looks like a clock resting on top of a mantel. The defendant's clock is not above but alongside the simulated fireplace which is contained within a structure obviously comparable to what the patent claim describes as a hollow base portion. Since it makes no difference whether the clock is alongside or on top of the simulated fireplace, it seems clear that the defendant's structure as viewed from the rear, in Plaintiff's Exhibit 5, does indeed contain a hollow base portion which acts as a housing alike for the clock and the drum and other devices which produce the appearance of the combustion of logs in the fireplace, and so the words "a hollow base portion" are not deemed to distinguish the two structures in any essential respect.

The next asserted difference relates to the opaque wall which according to Claim 9 is mounted "within said base portion", and it is said that this is not true of the defendant's structure. This probably means that since the defendant's structure is said not to contain a hollow base portion, it necessarily follows that the opaque wall which is clearly present in the defendant's device, cannot be mounted therein. Clearly there is a housing provided by the defendant for both the clock and the simulated fireplace action. It is not important whether that be called a hollow base portion, or something else serving the same purpose.

The next alleged difference has to do with the reference in Claim 9 to the drum, i. e., as being "within said base portion." What has been said above disposes of this suggestion; also the position of the drum as described in Claim 9 as follows: "with a portion of said drum extending through the opening in said opaque wall" is excluded from the stipulation, apparently on the theory that the defendant's drum does not so extend. It is assumed that the defendant's assertion is correct, although Plaintiff's Exhibit 5, a photograph of the defendant's structure viewed from the rear when opened, does not so reveal. In any case, it is not important for present purposes.

The final respect in which the structures are said to differ has to do with so much of Claim 9 which says:

"means rotating said drum in a direction to move the cylindrical surface thereof upwardly and rearwardly with respect to said opaque wall *to bisect the light rays from said illuminating means* by said depressions for reflection thereby through the opening of said opaque wall *upon the translucent portion of said flat plate.*"

The words are underlined for the purpose of showing that which the defendant declines to stipulate as to similarity between the competing structures. An examination of the photograph, Plaintiff's Exhibit 5, of the offending structure fails to reveal the reason for this refusal, and in the opinion presently held it can be disregarded for the purpose of decision.

The defendant urges that Claim 9 as added and filed under date of March 25, 1955 is open to objection for several reasons.

As the patent was originally filed there were eight claims, all of which were rejected by Office action on November 10, 1954, because of the anticlockwise rotation ascribed to the drum, and because the alleged invention was deemed to be unpatentable over Phillips, British Patent No. 450,941 (1936), and also unpatentable over Brooks, U. S. Patent No. 2,684,244 (July 20, 1954).

The comment with regard to Phillips was: "The back wall of Phillips, with the serrated light opening in the mask 12, is deemed the equivalent of that recited."

As to Brooks, the comment was: "The device of Brooks when placed in a real fireplace is deemed the equivalent of that recited because it produces the same result in the same environment."

The response of the patentee was to make an unimportant change in the specification; and in the claims, to cancel "an anticlockwise" and substitute "to move the surface thereof upwardly and rearwardly with respect thereto"; then Claim 9 was added, and in connection therewith argument was made distinguishing the disclosure of Hancock from both Phillips and Brooks. The solicitation was effective, and the claim was allowed.

The testimony clearly reveals knowledge on the part of the defendant concerning the plaintiff's device and structure prior to the completion of the defendant's first model of the accused device; likewise knowledge on the part of Hancock of the defendant's device and structure, at the time that Claim 9 was formulated and filed March 25, 1955.

The plaintiff's clock was first marketed in June of 1954 and up to the time of

trial some 90,000 had been sold, yielding a gross figure of $700,000.

The accused device was first sold on November 10, 1954 but the nature and extent of the defendant's business in that connection has not been stated.

Since the patentee Hancock knew of the defendant's structure, it is argued that Claim 9 was formulated for the express purpose of supporting an infringement cause; this means that perhaps it may be assumed that the defendant's structure does not infringe Claims 1 to 8 inclusive. Since they are not in suit, that question is not before the court. The election to rely on Claim 9 might be consistent with acquiescence in that suggestion but it cannot be said, nor need it be, that this is clearly so.

Attention is necessarily directed to the differences in the substance of the first eight claims as contrasted with the ninth in suit, according to defendant's argument.

Claim 9 reads as follows:

"A simulated fireplace clock having a hollow base portion the front wall of which provides an opening, a vertically extending opaque wall mounted within said base portion to the rear of said opening and having an opening in its lower portion of irregular outline and having the face thereof adjacent the opening of the front wall dressed to simulate brickwork, a relatively flat vertically extending plate mounted in the opening of said front wall forwardly of said opaque wall and in spaced relation with respect thereto, said flat plate having the upper portion thereof formed of transparent material and the lower portion thereof opposite the opening in said opaque wall formed of translucent material, a drum within said base portion to the rear of said opaque wall with a portion of said drum extending through the opening of said opaque wall, said drum having irregular depressions in its cylindri-

cal surface of different color characteristics and of highly light-reflective material, means for supporting said drum for rotation about a horizontal axis, illuminating means to the rear of said opaque wall and above the opening thereof and said drum, and means rotating said drum in a direction to move the cylindrical surface thereof upwardly and rearwardly with respect to said opaque wall to bisect the light rays from said illuminating means by said depressions for reflection thereby through the opening of said opaque wall upon the translucent portion of said flat plate."

The defendant's brief summarizes the asserted differences between the first eight claims and Claim 9 to be:

(1) An opaque wall (21) with lower opening (35) with jagged edge (36) "rearwardly of clock opening (18)."

(2) The drum in base (12) is to the rear of the opaque wall (21).

(3) The introduction of the term "medial portion" of the cylindrical surface of the drum.

The foregoing are additions to the first eight claims.

It is stated that the following indicate the omissions from Claim 9 of that which is asserted in Claims 1 to 8 inclusive, namely,

With reference to the forward extending plate 26:

(1) There is no provision to simulate burning embers;

(2) Nor does it appear to contain a frosted portion to simulate smoke;

(3) No provision in 26 to simulate tongues of flame;

(4) The simulation of embers is not said to result from the extension of the drum forwardly through opening 35;

(5) It is not stated that the reflection from the drum is upon the rear surface of place 26.

The same brief contains the following:

"Summary of Differences Between Claim 9 and Claims 1–8.

"Claim 9 has omissions in structure and assigned functions therefor as compared to claims 1–8 as follows:

"1. Flame structure 33 and function omitted.

"2. Ember structure 31, 32 and function omitted."

It is necessary to have these asserted differences in mind because the defendant's arguments are based upon them in varying aspects, namely:

(1) The patent is invalid because of defendant's intervening rights;

(2) It is likewise invalid because there is no oath to support Claim 9;

(3) It is invalid because Claim 9 is not readable on the disclosure.

The first argument, if understood, is that the defendant acquired the right to make and sell its accused structure prior to the grant of plaintiff's patent, because that device being on the market (presumably bearing an appropriate notice, as to which the record is silent) in June of 1954, the defendant had the right thereafter to make and sell its own device relying upon its ability to forecast the terms of the patent grant concerning the claims which might be allowed and the form thereof, if the plaintiff's solicitation were to be successful. That having chosen to make and sell a competing device not substantially different from the plaintiff's in structure or design, it acquired the right to prevent the plaintiff from asserting as a claim of Hancock's disclosure, that which the defendant had adopted and exploited as the result of an examination of the plaintiff's product.

No case has been cited to sustain this contention but the argument is made that Claim 9 is a new invention lying beyond the specifications of the patent as appears above, since the flame and ember aspects of the structure do not appear in Claim 9.

A short answer is that a specification describing a simulated fireplace, seemingly a wood-burning device, provides the appearance of all or some of the apparent results of the combustion of logs; sometimes they yield smoke, sometimes flames and sometimes embers, but not always simultaneously. Since that is true, a claim which could have been compatible with the appearance of all such phenomena does not lose its essential character if it be restricted in terms to only some of them.

It is the apparent combustion of wood logs in an open fireplace with which the patent is broadly concerned, and it is not thought that the defendant's argument demonstrates the contrary.

Reliance is had upon U. S. Industrial Chemicals v. Carbide, etc., 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105. In this case the decision was that a reissue patent describing a process for the production of ethylene oxide as *permissive* of the introduction of oxygen, while the original patent taught that it was *mandatory,* was for that reason, descriptive of a different process which was not the same as the one originally disclosed, and hence the reissue was invalid.

Here the court is not dealing with a precise process devised to yield a definite product, but a mechanical patent so constructed and functioning as to produce an optical illusion which by its nature must be of varying appearance within clearly suggested limits.

If this patent is understood, its essential feature is the extending plate 26 which acts to diffuse, filter or refract the reflected rays of light that are thrown upon it from the rear, as has been explained. Whether the translucent portion of that plate should be so constructed as to seem to reveal the presence of flames and embers or not, so long as the illusion of a burning log fireplace is preserved, is relatively unimportant in defining the disclosure of the asserted patentable invention.

Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.

Ed. 34, and Muncie Gear Works v. Outboard etc., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 cited by defendant have been examined but are thought to be inapposite. The first involved an amendment embracing an invention held not to have been described in the application as filed. Because that was so under the facts of that case, does not indicate that it must be true here. The second involved the unsuccessful attempt to add by amendment an alleged invention of which there had been prior public use for more than two years.

■ The finding here is that Claim 9 was for the same invention as is described in the specifications and not for a new invention exterior thereto.

Further, that the defendant acquired no intervening rights between the time when it first designed the model of the accused device and the grant of the Hancock patent containing Claim 9, which patent is now the property of the plaintiff.

It is further found that the features of Claim 9 criticized by the defendant as additions to or alterations in the first eight claims, point to mere details of construction by way of clarification, but not to new elements sought to be introduced by expanding the number or office of the several parts of the mechanism as originally described and portrayed. That the omissions criticized, namely the failure to include means to indicate the apparent presence in the optical illusion of flames and embers, do not relate to any

mandatory feature or features of the claimed invention as originally presented, and they are to be deemed as permissible variations in the details of the mechanism as a whole.

It now becomes necessary to decide the question of validity.

The defendant frankly states that no one prior patent or publication shows the full structure of the quoted claim, and that reliance is had upon the teachings of the prior art to reveal the lack of patentable invention.

Since the plaintiff's structure is seen to be a combination of known elements, the test confirmed in Great A. & P. Tea Co. v. Supermarket, 340 U.S. 147 at page 152, 71 S.Ct. 127, at page 130, 95 L.Ed. 162 applies, namely:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."

The effort has been made to describe the elements which constitute the Hancock claimed invention, and repetition thereof in this connection would be superfluous.

A simulated fireplace in which the illusion is presented of burning logs, is not new; variation in the size of the portrayal, and juxtaposition to a clock, introduce no essentially new concepts.

The applicable art embraces the following patents:

Brooks #2,684,244—U. S., filed June 14, 1952,
granted July 24, 1954;
Davis #414,280—British 1934;
Phillips #450,941—British 1936.

In each of these the apparent products of combustion seemingly taking place in a simulated fireplace, are the result of the rotation of a member resembling the plaintiff's drum, which throws reflected electric light from the rear of the apparently burning logs or coals, outward and so as to meet a view from the front.

It is true that in Brooks there is no element such as the extending plate 26 in position to receive the lighting effects from the rear, and a close observer could see the rotating member through the simulated burned through areas in the logs. Hancock's extending plate 26 is therefore not taught or even suggested

by Brooks. That is a difference of consequence if the Hancock patent is presently understood, for the office of that element is vital to the creation of the illusion which has been explained; nor does Brooks teach anything on that subject. Probably the allowance of the Hancock patent over Brooks is thus explained, nor can it be criticized.

Of the British patents, Phillips alone was cited by the Examiner. His filter and screen may suggest but do not teach unmistakably Hancock's extending plate 26.

In the opinion of this court, however, the omission of Davis from a study of the art resulted in a failure to recognize his teaching of an element sufficiently like Hancock's extending plate 26, to rob the latter of any true inventive concept in relation to his combination of elements. Without explaining in detail the Davis structure, it is sufficient to say that the invention is described as of an electric heater "in which a fire effect or the illusion of a fire is produced and being of the type in which there is a source of light surrounded by a rotating screen with apertures or windows through which light passes to an intercepting screen or panel having apertures or windows or being of varying tint, and through such intercepting screen to a *final screen* and/or to artificial fuel, thus to give a flickering or flamelike effect. * * *" (Italics supplied.)

* * * * * *

"G is an observation or *final screen of translucent material* and of such a nature that light, when thrown on to its inner surface, shall be clearly visible when the outer surface is viewed from the direction of the front of the apparatus." (Italics supplied.)

Claims 2, 3 and 4 sufficiently embody the foregoing as not to require quotation.

Since the idea of a final screen as it is called by Davis, is essentially the concept embodied in Hancock's extension plate 26, it results that the latter was not new to the art, and its presence in the disclosure by the plaintiff did not render his device a patentable invention.

The defendant also cites Hammond #2,042,337 for a calendar clock, but without relevance to the art here involved.

The combination of elements upon which plaintiff relies is therefore not new in any essential respect. The front wall is a necessary part of any fireplace and the "spaced relation" between the opaque wall and the plate 26 probably means that they are separated by an adequate space, but what that might be deemed to be is not indicated. The drum is not to be distinguished from that of Brooks in any essential respect concerning its reflecting surface of the incandescent light of the bulbs.

Davis achieves the same effect by rotating a casing around the light bulb, but that is at most a mere mechanical expedient resulting in a distinction in appearance but not a difference of function in the combination presented.

Davis is not thought to anticipate Hancock in the patent law sense, but to teach a combination of elements not essentially different from those which Hancock employs to create an optical illusion of the same general character. Thus the Davis patent is properly to be consulted in seeking to understand the constituency of the art, when the Hancock patent application was examined.

It results from this inquiry that the plaintiff's patent does not embody a disclosure of patentable invention within the requirement quoted from the A. & P. case, supra.

The findings are:

1. The Hancock patent is invalid for failure to disclose patentable invention.

2. If the Hancock patent is valid, defendant's structure is an infringement.

The conclusions of law are to the same effect.

A decree is therefore directed to be entered in favor of the defendant, for the foregoing reason, with costs, to be settled on notice.

If additional findings are desired, they may be settled on notice, and presented with the proposed decree.