TELE-SONIC PACKAGING CORPORA-
TION and John Gerbe, Irving Wolf
and Arthur Wolf, Plaintiffs,

v.

ERRICH INTERNATIONAL CORPORA-
TION and Manuel L. Ruderman, De-
fendants (CLEARVIEW PACKAGING
COMPANY, an Illinois Corporation,
Additional Defendant).

United States District Court
S. D. New York.
March 23, 1959.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, Robert McKay, New York City, of counsel, for plaintiffs Tele-Sonic Packaging Corp. and John Gerbe.

Frankenthaler & Kohn, New York City, for plaintiff Tele-Sonic Packaging Corp.

Alessio & Kirby, New Hyde Park, Long Island, N. Y., Sherman P. Appel, Chicago, Ill., of counsel, for plaintiffs Irving Wolf and Arthur Wolf and additional defendant, Clearview Packaging Co.

Kirschstein, Kirschstein & Ottinger, New York City, Morris Kirschstein, David Kirschstein, New York City, of counsel, for defendants.

LEVET, District Judge.

The complaint herein charges the defendants with a wilful and deliberate infringement of United States Letters Patent No. 2,673,016, issued to plaintiff John Gerbe on March 23, 1954, on an application filed on October 11, 1952. Said infringement is claimed to have resulted from the defendants' manufacture, sale and use of a certain bag-distending apparatus allegedly within the scope of the patent. The answer admits the existence of the patent but denies that any bagging apparatus made by the defendants was within the scope thereof; denies any wilful or deliberate infringement of the patent; denies the validity of the patent; alleges affirmatively that plaintiffs have misused the patent and have come into court with unclean hands so as to preclude the relief sought.

The first counterclaim seeks a declaratory judgment that the aforesaid Gerbe patent is invalid and not infringed. The reply to this counterclaim is a general denial. The second counterclaim was withdrawn. The third counterclaim alleges that the plaintiffs have illegally conspired among themselves to monopolize the sale of bags to various industries and have misrepresented the allegations of the present action to others and thus have damaged defendants' business reputation, for which damages are sought. The reply to this counterclaim is a general denial.

### The Validity of Patent
### No. 2,673,016

After hearing the testimony, examining the exhibits, the pleadings, briefs and proposed findings, this court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. The plaintiff Tele-Sonic Packaging Corporation (hereinafter called "Tele-Sonic") is a corporation of the State of New York, having its principal place of business in the City of New York, State of New York, and is engaged in the manufacture and sale of bag-distending apparatus or packaging machines as alleged exclusive licensee under the Gerbe patent hereinafter referred to.

2. The plaintiff John Gerbe (hereinafter called "Gerbe"), a resident of the State of New York, is the patentee of United States Letters Patent No. 2,673,-016, issued on March 23, 1954, on an application filed on October 11, 1952, for a bag-distending device, and said plaintiff is now the owner of a one-half undivided part of the entire right, title and interest in the patent.

3. The plaintiffs Irving Wolf and Arthur Wolf (hereinafter called "Wolf") are both residents of the State of Illinois and are the owners of the remaining one-half undivided part of the entire right, title and interest in the aforesaid patent derived from an assignment to them from Gerbe dated May 21, 1954. (Pl. Ex. 3.)

4. By an agreement dated May 21, 1954, between Wolf and Gerbe it was agreed that Gerbe was to have the exclusive right to make and sell bag-distending apparatus according to the Gerbe patent for all trades and industries other than laundry and dry-cleaning in all states except Minnesota, Wisconsin, Iowa, Illinois, Indiana, Michigan, North Dakota and South Dakota. In these states, Wolf was to have the exclusive right to make and sell bag-distending apparatus according to the Gerbe patent for any use whatsoever. Wolf was to have the exclusive right to make and sell bag-distending apparatus for use in the laundry and dry-cleaning industries throughout the entire United States with the exception of the States of Maine, New Hampshire, Vermont, Massachusetts, Connecticut, Rhode Island, New York, Pennsylvania, New Jersey, Delaware, Maryland, West Virginia, Virginia, Florida and the District of Columbia, in which area Gerbe was to have exclusive rights with respect to the laundry and dry-cleaning industries. (Pl. Ex. 4.)

5. On February 23, 1955, Gerbe entered into an agreement with Tele-Sonic, which was conditioned upon his prior agreement with Wolf of May 21, 1954, whereby Gerbe, for consideration and a royalty, granted to Tele-Sonic such exclusive right to make, sell and use bag-distending apparatus as had been retained by him under the agreement with Wolf. (Pl. Ex. 15.)

6. On or about August 9, 1955, Wolf, for a royalty, granted to Tele-Sonic the exclusive right to make, sell and use for any purpose except the laundry and dry-cleaning industries bag-distending apparatus made according to the Gerbe patent aforesaid in Minnesota, Wisconsin, Iowa, Illinois, Indiana, Michigan, North Dakota and South Dakota. By this said agreement Wolf confirmed Tele-Sonic's right to make bag-distending apparatus to be used in the laundry and dry-cleaning industries in the states allotted to Gerbe in the Gerbe-Wolf agreement of May 21, 1955, to wit, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, Rhode Island, New York, Pennsylvania, New Jersey, Delaware, Maryland, West Virginia, Virginia, Florida and the District of Columbia. (Pl. Ex. 16.)

7. The defendant Errich International Corporation (hereinafter called "Errich") is a corporation of the State of New York, having its principal place of business in the City of New York, State of New York, within the Southern District of New York, which manufactures and sells packaging machines which are alleged to infringe the said Gerbe patent.

8. The defendant Manuel L. Ruderman is president and treasurer of the defendant-corporation Errich and owns a substantial stock interest therein.

9. The additional defendant Clearview Packaging Company (hereinafter called "Clearview") is an Illinois corporation having its principal place of business in Chicago and is engaged in the

business of making and selling bags. Plaintiffs Irving Wolf and Arthur Wolf are its controlling stockholders. Clearview was made an additional party herein by stipulation and order entered thereon on January 12, 1957, jurisdiction of this court having been consented to by its president, Irving Wolf.

10. The Gerbe patent relates to the art of packaging machines and describes a machine for packaging articles; the particular article shown to be packaged thereby is a shirt, although the machine is and has been used by Tele-Sonic for the packaging of many articles such as popsicles, potato chips, loaves of bread and other items. The art goes back at least to 1924, as exemplified by the Colby patent No. 1,611,268, relating to the packaging of meats such as hams, and by the Anderson patent No. 2,355,500 in 1941 for packaging other articles such as confections like popsicles.

11. The Gerbe patent, which is stated to be an invention relating to apparatus for supporting and distending bags, consists of the following:

(a) A moveable support 18 for holding a stock of collapsed bags.

(b) A spring 21 to force the bags against a tongue.

(c) A tongue 16 located above the stack of bags.

(d) A pair of chutes 36 pivoted on vertical posts and urged towards one another at their forward ends by a spring 40 so that normally there is a wide opening between the chutes in which to receive the article which is being moved into the bag by an operator, causing the forward ends of the chutes to spread against the spring action into and against the sides of the bag which has been inflated by means of

(e) A fan 32 which blows air between the front ends of the chutes and over the tongue.

(f) A stop means or back stop 30 positioned beyond the ends of the collapsed bags. (See Gerbe patent, Pl. Ex. 2.)

12. The said Gerbe patent has eleven claims. Seven of these claims, to wit, 1, 2, 3, 4, 5, 6 and 8, are alleged to be infringing herein. Of these, 2, 3, 4, 5 and 6 are of the type known as dependent claims, all of which refer to and are dependent upon claim 1.

13. Claim No. 1 calls for three principal elements of the machine, as follows:

(1) "A *tongue* for engaging one side of a collapsed bag."

(2) "An openable *distending means* having bag engaging ends for shaping the inside of the bag when opened."

(3) "A *support* for said collapsed bag for holding a side of the bag stationary in filling position against the tongue and for holding the collapsed bag in proper position for filling with respect to the distending means."

The distending means above referred to is further described as follows: "The said distending means being longitudinally fixed in position with respect to said tongue and laterally openable inside the bag while said bag is secured between said support and tongue."

This claim does not limit the support to one for horizontal stacking of the bags. It does not refer to a spring for holding the support against the tongue; nor does it refer to a blower, without which a manual opening of the bag would be required.

14. The dependent claims are as follows:

(a) Claim 2 describes the distending means as comprising a pair of chute-like members having free ends positioned over the collapsed bag whereby when the bag is opened a portion of the said free ends will be positioned inside the bag.

(b) Claim 3 states that the distending means are normally spring biased to closed position over the collapsed bag.

(c) Claim 4 is worded as follows:

"The apparatus of claim 1, wherein the distending means are pivotally mounted and having article engaging cam faces and pressure means

secured to said distending means and operated by the pressure of the article for opening said distending means."

(d) Claim 5 provides only that "the edge of the tongue is convexly curved over the collapsed bag to facilitate opening of the bag about the distending means."

(e) Claim 6 provides that the space between the distending means, that is, the chutes, is of "a width equal to the human hand" so that the bag may be supported while being moved through the chutes.

15. Claim 8 calls for the following elements:

(a) "A movable support for holding a stack of collapsed bags."

(b) "Means for inflating the top bag."

(c) "A stop means positioned beyond the closed ends of the collapsed bags."

(d) "A tongue positioned over the open ends of the collapsed bags and engaging the outside of the top bag of the stack."

(e) "Means for applying pressure to the movable support."

This claim specified a stop means "extending beyond the closed ends of the collapsed bags for a distance less than the distance to the end of the top bag in inflated position."

16. Certain features of the Gerbe patent are anticipated in Patent 2,633,281, granted to M. B. Rasmusson (Deft. Ex. 1E), filed August 18, 1947 and issued March 31, 1953. The Rasmusson patent relates to a bagging device with pivotally mounted guide and spreader fingers for use in vertically bagging confections. This device contains each of the following elements:

(a) A tongue 18.

(b) A support in the form of a pendulum weight 12, by means of which the stack of bags are urged against the tongue.

(c) Spreader fingers 34, spring biased towards each other. These act as guides

for the entering article; also as a distending means to spread the top of the bag apart and to hold it spread apart while the article descends into the bag.

(d) A blower (not shown in the figures).

With respect to the spreader fingers, the Rasmusson patent states:

"The primary object of the invention is to provide a bagging device wherein an article passing to the bag actuates spreader elements for holding the top of the bag open and for guiding the article into the bag.

"Particularly the invention is directed to the provision of spreader elements which are automatically withdrawn to an initial out of way position away from the open top of the bag, and which are moved by the article passing to said bag so as to spread the top of the bag apart and hold it spread while the article descends into the bag."

Haviland H. Platt, an engineering consultant called by the defendants, testified, and I so find, that the Rasmusson device could be converted from a vertical to a horizontal bagger by any competent designer using the ordinary skill expected of a mechanic. (SM 670–671.)

17. Features of the Gerbe patent are also anticipated in Patent 2,721,015, granted to John L. Canales, filed May 20, 1950, and issued October 18, 1955. (Deft. Ex. 1H.) In the Canales device, which provides for a plurality of units side by side,

(1) Collapsed bags stand vertically pressed forward by a support member which takes the form of a swinging weight 177 against a tongue 154.

(2) The article to be packaged passes through distending means in the form of attachable flexible bag opening fingers 197 and 198, which, in turn, distend the opening in the bag, forming it to receive the article.

(3) An air blower inflates the bags. (SM 610–614.)

The flexible bag opening fingers referred to in (2) above are described in claim 26 of the Canales patent as follows:

" * * * flexible resilient finger members of relatively soft compressible material mounted at the opposite sides of said chute adjacent its lower end and extending into said chute in downwardly converging relation for displacement by an article into the open top of said foremost bag to distend said bag for receipt of said article, said fingers being mounted and constructed to spring back into their position aforesaid in said chute upon release of said foremost bag."

The Canales patent apparently contemplates the use of a resilient substance such as perhaps rubber for its finger members rather than spring biased metal members as in the Gerbe patent. However, this does not, in my opinion, diminish its effectiveness as controlling prior art.

18. For a number of years, commencing in 1940, Anderson Bros. Mfg. Co. (hereinafter called "Anderson") manufactured and sold certain quantities of a packaging machine known as the Anderson Model 134 bagger. (See model, Deft. Ex. 13.) This Anderson Model 134 is of the vertical type wherein the popsicle, a comparatively small article, is dropped from a chute into an inflated bag.

19. In 1949, Anderson commenced to market a bagger as Anderson Model 184 and 184–1, which was adapted for use by bakers in packaging loaves of bread. The loaf was fed horizontally by hand instead of vertically by gravity. The Model 184 and 184–1 provided for horizontal stacking of bags. It has guide blades, a substantially horizontal spring platform or support for the bags and a tongue against which the bags are pressed. The earliest sale by Anderson apparently was May 27, 1949, to Ray-Mor Baking Company of Salisbury, Maryland. (Deft. Ex. 26B.) Unlike plaintiff's bagger, the guide blades on Anderson's Model 184 and 184–1 bagger were not spring biased towards each other and did not extend into the bag. However, Walter E. Gunnersen, a vice-president of Anderson, testified by deposition that Anderson had manufactured a bagger with longer guide blades which did move inside the bag. (SM 511–512.)

20. In 1949, Anderson was requested by the Ambrosia Chocolate Co. of Milwaukee, Wisconsin (hereinafter called "Ambrosia") to produce a machine for packaging a large bar of chocolate in a bag with an accordian fold. Whereas Model 184 had been designed for the bakery trade, another machine (Model 184–4) was made and adapted to accommodate the particular product and bag as required by Ambrosia. The guides were modified to a greater length and with wider tips which reached into the bag. The distending fingers were pivoted, springs being mounted on a post for biasing the members to a closed position towards one another. A photograph of the Ambrosia machine (Deft. Ex. 28) was taken before the machine was shipped, and the original invoice dated January 30, 1950 (Deft. Ex. 26F) evidences the shipment.

Gunnersen testified, and I so find, that Anderson employees installed the machine and "got it to work" (SM 556–557); that after installation certain additional servicing was required (SM 559); and that Ambrosia sought to return the machine about a year after its delivery but Anderson refused to accept the return. (SM 556.)

21. The Anderson Model 184–4 machine, sold to Ambrosia, has all of the operative elements of Claim 1 of the Gerbe patent, to wit, a pair of pivoted distending guides, a pair of tongues for engaging the front of a collapsed bag near its mouth, and a spring urged support for the collapsed bags which presses the mouth of the top bag against the tongues. Furthermore, the bags are stacked horizontally and guides are swung into a bag held between the tongues and moved laterally against the side of the bag so as to distend the same. Additionally, the Ambrosia machine has

springs for biasing the guides to closed position over a bag.

22. Claim 1 of the Gerbe patent is fully anticipated by the Anderson Model 184-4 machine sold to Ambrosia. It is in part anticipated by the Anderson 184 and 184-1 machines, which do not, however, have openable distending means with bag engaging ends as described in the Gerbe claim. It is in part anticipated by the Rasmusson (see Finding 16) and by the Canales (see Finding 17) patents, each of which contains openable distending means.

23. The so-called "chute-like" members for distending means described in Claim 2 of the Gerbe patent were anticipated in the following patents:

(1) Patent 1,611,268, filed May 23, 1924, issued December 21, 1926, to H. W. Colby. (Deft. Ex. 1A.)

(2) Patent 2,685,995, filed December 4, 1950, issued August 10, 1954, to R. R. Fesser. (Deft. Ex. 1G.)

In the latter device, the chute-like members 161 and 162 are spring biased, there being a spring 166 on one chute and a cross linkage which causes the other chute to follow the motion of the first. (SM 626.)

24. Claim 3 of the Gerbe patent is anticipated by the Anderson bagger Model 184-4 and by the Rasmusson patent. (Deft. Ex. 1E.) It is also substantially anticipated by the Canales patent. (Deft. Ex. 1H.)

25. Claim 4 of the Gerbe patent is likewise anticipated by the Anderson bagger Model 184-4 and by the Rasmusson patent. (Deft. Ex. 1E.)

26. Claim 5 of the Gerbe patent, which provides for a convexly curved tongue, represents no substantial invention over the prior art as reflected in the Rasmusson (Deft. Ex. 1E) and Canales (Deft. Ex. 1H) patents or in the Anderson Model 184, 184-1 and 184-4 machines. The tongue in each of the foregoing devices holds the bag in position for filling and functionally operates in the same way as does the tongue in the Gerbe machine. (SM 603.) While a convexly curved tongue may tend to conform to the shape of an inflated bag, which is not true of a flat tongue, I am not persuaded that this facilitates the opening of the bag about the distending means to any greater extent than a flat tongue.

27. Claim 6, in reference to the space between the distending means or chutes being of the width equal to a human hand, is a triviality. In any event, this principle is present in Patent 2,640,638 of C. T. Nichols, filed May 17, 1949 and issued June 2, 1953. (Deft. Ex. 1F; SM 605-606.)

28. The back stop referred to in Claim 8 of the Gerbe patent is an unessential element which in fact was not always used in the Gerbe machine.

The "means for applying pressure to the movable support," referred to in said claim, is anticipated by Patent 2,685,995, filed on December 4, 1950 and issued to R. R. Feeser on August 10, 1954, which employs a horizontal support 190, spring pressed 192 against a tongue 186, where a horizontal rather than a vertical stacking is desired. (Deft. Ex. 1G, Fig. 11; SM 624-625.)

The "means for inflating the top bag," referred to in Claim 8, namely a blower, is employed in and anticipated by many of the patents and machines heretofore discussed and represents no patentable invention by Gerbe.

29. Claims 2, 3, 4, 5, 6 and 8 of the Gerbe patent are each for trivial variances from Claim 1 and are obvious changes or adaptations well within the competence of a person having ordinary skill and knowledge in the art.

### Discussion

Charles L. Mantell, a chemical engineering expert called by the plaintiffs, conceded that each of the features of the Gerbe patent might be found in the prior art. He maintained that the novelty of the Gerbe patent was in "The combination of elements and the order in which they function;" that "It gave a new com-

bination which satisfied a need * *." (SM 1215–1216.) According to Mantell, the novelty of the combination of elements in the Gerbe patent arose from "The fact that they were arranged on a flat machine, that they had distendable means." (SM 1216.) However, he conceded that there were "flat machines" and "distendable means" before. (SM 1216.)

■■ The test of novelty applicable to combination patents was stated in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, as follows:

"* * * 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' * * The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *" 340 U.S. at pages 151–152, 71 S.Ct. at page 130.

■ A patent lacking in invention and performing no new function cannot be sustained though it embodies an improvement of one part of an old combination. See Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549–550, 58 S.Ct. 662, 82 L.Ed. 1008; Bergman v. Aluminum Lock Shingle Corp. of America, 9 Cir., 1958, 251 F.2d 801, 808.

■ Similarly, where a patent contains no novel elements and its use of elements in combination represents no more than the application of ordinary and obvious mechanical skill in the course of a natural development and expansion of the art, the patent is invalid. See Concrete Appliances Company v. Gomery, 1925, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L.Ed. 222; Welsh Manufacturing Co. v. Sunware Products Co., 2 Cir., 1956, 236

F.2d 225, 227. This is true even though no one prior patent or publication contains the full combination upon which the patent in suit is based. See Mastercrafters Clock & Radio Co. v. United Metal Goods Mfg. Co., Inc., D.C.E.D.N.Y. 1956, 138 F.Supp. 388, 393.

■ Even under the relaxed standard of invention of Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, the Gerbe patent discloses no patentable invention over what was known in the prior art. It does not present a combination of known elements which, operating together, reveal an inventive concept or function not theretofore disclosed. At most, it represents an aggregation of elements well known in the prior art for use in connection with certain types of bags. That this aggregation would have been obvious to a person having ordinary skill in the art is indicated by the fact that substantially the same aggregation was employed in the Anderson Model 184–4 bagger sold to Ambrosia (see Finding 20), which bagger was itself merely an adaptation of the Anderson bagger Model 184 and 184–1 to accommodate a particular product and bag and did not teach any new art.

■■ Under these circumstances, the fact that the Gerbe patent contemplates a machine for bagging soft goods into tight fitting bags, whereas previous machines may have been directed toward bagging other products into different types of bags, is not material. Similarly, it is immaterial that the Gerbe machine may have been a commercial success. See Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973; Vischer Products Co. v. National Pressure Cooker Co., 7 Cir., 1949, 178 F.2d 125, 126; Harley C. Loney Co. v. Ravenscroft, 7 Cir., 1947, 162 F.2d 703, 709.

■ While the court must, of course, give due weight to the presumption of validity raised by the issuance of the Gerbe patent, in my opinion, this presumption has been clearly overcome. See Savoy Leather Manufacturing Corpora-

tion v. Standard Brief Case Co., Inc., 2 Cir., 1958, 261 F.2d 136, 138.

### Counterclaims of Defendants for Unfair Competition, Etc.

In addition to the foregoing Findings of Fact, I find as follows:

30. Tele-Sonic and Errich advertise their packaging machines in trade publications, by word of mouth, direct mail circulars and at trade shows attended by persons interested in the packaging of products.

31. The persons to whom Tele-Sonic and Errich primarily direct their advertising efforts are the end users of the packaging machine, i. e., persons having a product to package, and converters of bags, i. e., those who manufacture bags in which items can be packaged.

32. Converters are an especially good source of business to Tele-Sonic and Errich because many of them have large sales organizations, including numerous salesmen who are in a position to recommend packaging machines to the converters' customers.

33. Commencing on or about September 27, 1954 and for some time thereafter, Tele-Sonic sent out a total of at least 1,000 copies of a mimeographed circular to various converters and end users in the packaging industry. This circular (Deft. Ex. 41A) reads in part as follows:

"The Tele-Sonic Bag Opener is manufactured and distributed under Patent No. 2,673,016. It has been called to our attention that a few concerns have started manufacture and distribution of copies of our machine which legal counsel advises is a direct and inexcusable infringement, subject to restraint and suit. As we are now the sole licensee of the inventor, insist on a Tele-Sonic Bag Opener."

34. About 500 to 1,000 copies of a second circular (Deft. Ex. 41D), containing language identical with that quoted above, were sent (apparently about the same time) by Tele-Sonic to converters and end users in the packaging industry.

35. Thereafter, Tele-Sonic sent about 1,000 copies of a mimeographed letter (Deft. Ex. 41B) to converters in the bagging industry, which letter reads in part as follows:

"In the interest of better business relations, we are calling your attention to the fact that Errich International Corp., their machine called a speedy bag packager and Mr. Manuel Ruderman, have been sued by us in the U. S. District Court of the Southern District of New York for infringement of Gerbe Patent No. 2,673,016. It is also understood that any unauthorized user of the infringement of our patented rights is liable."

36. In April 1955, Tele-Sonic displayed a certain sign at the National Packaging Show, a trade show in Chicago, Illinois, and at the Knitting Arts Show in Atlantic City, New Jersey. This sign read as follows:

"Infringement Notice

"The Tele-Sonic Packaging Corporation of New York is the sole authorized manufacturer of the Bag Opener covered by United States Letters Patent 2,673,016 issued on March 23, 1954.

" * One fraudulent copier of this patent is being vigorously sued for infringement on our legal and moral rights. All users of any bag opener using the same infringing principles—produced by any unauthorized manufacturer—are hereby notified that they are incurring similar infringement liability.

:................................:

"Watch This Space

:                                :

For An

:                                :

Important Development

:................................:

"A Matter of Public Record

"U. S. District Court Action is well underway against Errich Int'l Corp., an

**344**

exhibitor at this show, and against Manuel L. Ruderman, it's President. Gross infringement for wilful and malicious intent to copy the operating principles of earlier models of the Tele-Sonic patent for use in Ruderman's machine called The Speedy Bag Packager is part of our action.

"We shall continue to fight to protect the rights of the inventor of this remarkable Bagging Device. Thank you for your friendship, your understanding and your business.

"Tele-Sonic Pkg. Corp.

"John P. Frank, President"

(Deft. Ex. 46; SM 856–857, 915.)

37. I find that the aforesaid sign was employed by the plaintiffs in bad faith with the intent of injuring the defendants' business by preventing or decreasing sales of the defendants' packaging machine at said trade shows.

38. At the Knitting Arts Show in Atlantic City in April 1955, Tele-Sonic distributed 500 to 1,000 copies of a mimeographed circular entitled, "News Flashes from Tele-Sonic." This circular reads in part as follows:

"Suit Against Copying Infringers Proceeding Swiftly. Users or Sellers of Infringing Copies Equally Liable

"It is gratifying to know that the Tele Sonic patent and operating principles, which is now amazing the manufacturing and packaging trades, (U. S. Patent Letters No. 2,673,016) is so good that there are those who would go for a temporary Free Ride and say 'Me, Too, please'. However, we, alone, continue to protect the inventor of this remarkable device. *And at a lower price,* per machine, than copies, to date!" (Deft. Ex. 44D.)

39. On June 8, 1955, less than two months after the institution of this action, Tele-Sonic and the individual plaintiffs herein brought Civil Action No. 6623 against Arthur M. Lowenthal, Arthur E. Lowenthal, Robert L. Lowenthal d/b/a Max Lowenthal and Sons, a customer of Errich, in the United States District Court for the Western District of New York, for infringement of the Gerbe patent.

40. On September 13, 1955, there was entered in the United States District Court for the Western District of New York in said Civil Action No. 6623 a Final Judgment and Consent Decree wherein said Max Lowenthal and Sons admitted infringement and consented to the issuance of an injunction restraining use and sale by them of defendants' machines.

41. On or about October 6, 1955, Tele-Sonic distributed the following mimeographed circular entitled, "News for You From Tele-Sonic," to the packaging trade, including end users of packaging machines and bag converters:

"On June 8, 1956, Tele-Sonic Packaging Corporation sued Max Lowenthal & Sons of Rochester, New York, on the ground that Lowenthal's use of a bag opening machine purchased from Errich International Corporation infringed. Tele-Sonic's rights in Gerbe patent No. 2,673,016 (Tele-Sonic Packaging Corporation et al. v. Max Lowenthal & Sons, No. 6623, United States District Court for the Western District of New York). In the absence of an appearance by Errich International Corporation in defense of this action against them, Max Lowenthal & Sons consented to a Final Judgment terminating this action by adjudging that the Gerbe patent was infringed by use of the Errich International Corporation machine. This Final Judgment was entered on September 12, 1955." (Deft. Ex. 44A.)

42. On or before July 1956, Tele-Sonic distributed the following mimeographed circular entitled, "News for You From Tele-Sonic," to the packaging

trade, including end users of packaging machines and bag converters:

"In view of the fact that a good number of people in our industry have entered our industry since our last infringement notice, this is to advise that the patent suit against Errich International Corporation, which manufactures a packaging machine under the name of 'Speedy Bagger', is in progress in the United States District Court for the Southern District of New York. In this action Errich International is charged with infringement of Patent No. 2,673,016 under which Tele-Sonic Packaging Corporation has exclusive license rights from the patentee.

"We also wish to advise you that the consent decree, which was obtained by Tele-Sonic in Rochester, New York, should not be confused with the suit mentioned above." (Deft. Ex. 44C.)

43. In the summer of 1956, Tele-Sonic distributed another mimeographed circular entitled, "News For You From Tele-Sonic," to the packaging trade, including end users of packaging machines and bag converters. This circular reads in part as follows:

"An underwear account recently advised us that in our best interest and in the best interest of customers, Dunn & Bradstreet should include in its report on Errich International Corporation reference to our infringement suit. When the matter was brought to the attention of Dunn & Bradstreet, the report was immediately revised to reflect the pending litigation. See Dunn & Bradstreet report of March 20, 1956." (Deft. Ex. 44B.)

44. In addition to the mimeographed circulars mentioned above, Tele-Sonic and its attorneys sent notices of infringement to specifically named stores and manufacturers. (See Deft. Exhibits 37A–F, 38A–D, 39A–I and 40.)

45. The plaintiffs never obtained a Canadian patent for the alleged invention of the patent in suit.

46. On September 15, 1954, Tele-Sonic sent the following notice of infringement to Gill Canada Company, 60 Elgin Street, N. Galt, Ontario, Canada:

"It has been brought to our attention that copies of our Tele-Sonic Bag Opening machine are being made and sold in competition with our products covered by patent No. 2,673,016.

"As you may not be aware of this infringement, we sent this notice to you together with a copy of our advertisement which appeared September 10, 1954 in The Daily News Record." (Deft. Ex. 42.)

47. An advertisement of the Tele-Sonic machine which appeared in the July 1955 issue of "Canadian Packaging" contained the following infringement notice:

"Infringement Notice

"Tele-Sonic Packaging Corp. is the only licensee of the inventor under Pat. No. 2,673,016. You are sure you're not infringing when you use our machine." (Deft. Ex. 43B.)

It appears that this advertisement was inserted by a Canadian jobbing concern which represented Tele-Sonic. Frank testified, and I so find, that this ad was not authorized by Tele-Sonic. (SM 718.)

48. An advertisement of the Tele-Sonic machine which appeared in the July 1956 issue of "Canadian Packaging" (Deft. Ex. 43A) contained an identical infringement notice to that quoted above. It appears that this advertisement was not authorized by Tele-Sonic. (SM 718.)

49. On the defendants' motion for a preliminary injunction in this action, Judge Edward J. Dimock of this court directed the plaintiffs "to refrain from representing in notices of infringement that the alleged infringement is gross, wilful, malicious or fraudulent." (See memorandum opinion dated August 9, 1955).

It appears that for several months after the entry of an order based upon the said memorandum opinion of Judge Dimock, Tele-Sonic's salesman's manuals continued to contain photographs of a certain objectionable infringement notice. (Deft. Exhibits 66C, D and E.) In my opinion the retention of these photographs in Tele-Sonic's manuals was entirely inadvertent. (See Deft. Ex. 66B.)

50. Except for the sign displayed at the Chicago and Atlantic City trade shows in April 1955 (see Finding 36), the defendants have failed to prove that the foregoing circulars, letters, advertisements or notices were employed by the plaintiff Tele-Sonic in bad faith with the intent of harming the defendants' business. With the above exception, I find that the plaintiff Tele-Sonic acted in good faith, believing that the Gerbe patent was valid and that the defendants' bagging machines infringed the same.

51. On February 3, 1955, the plaintiffs Wolf, then a co-partnership doing business as Clearview Packaging Company, and Gerbe commenced an infringement action against Famous Cleaners and Dyers, Inc., a Michigan corporation, in the United States District Court for the Eastern District of Michigan, Southern Division. A consent decree in favor of the plaintiffs was entered on March 16, 1956. (Pl. Ex. 1, p. 57; Pl. Ex. 30.)

52. On March 26, 1956, the plaintiffs Wolf and Gerbe commenced an infringement action against General Cleaner Products Co., Inc., an Illinois corporation, in the United States District Court for the Northern District of Illinois, Eastern Division. A consent decree in favor of the plaintiffs was entered on May 17, 1956. (Pl. Ex. 31.)

53. On May 29, 1956, Irving Wolf and others commenced an infringement action against Everett Sales & Equipment Corp. in the United States District Court for the Southern District of New York. (Pl. Ex. 1, p. 59.) A stipulation and order of dismissal was filed on August 11, 1958. (Pl. Ex. 1, p. 65.)

54. On June 15, 1956, plaintiffs Wolf and Gerbe commenced an infringement action against Comet Packaging & Paper Co., Inc., in the United States District Court for the Southern District of New York. A notice of voluntary dismissal in this action was filed on July 11, 1958. (Pl. Ex. 1, pp. 60, 64.)

55. On October 10, 1956, under the authorization of the plaintiff Irving Wolf (SM 813, 818, 823), Sherman P. Appel as attorney for Clearview, the additional defendant herein, sent a notice of infringement to American Laundry & Cleaner Supplies, Inc., of Milwaukee, Wisconsin. This notice reads in part as follows:

"Should you fail to comply, my client will have no alternative but to avail itself of the remedies offered in the law. In this regard, I wish to advise you that the owners of the patent have already been successful in sustaining rights in suits filed in Michigan, New York and Illinois.

"For willful infringement, there may be assessed against you treble damages and plaintiff's attorney's fees." (Deft. Ex. 51A.)

It appears, and I so find, that the bag-distending devices distributed by American Laundry & Cleaner Supplies, Inc., were manufactured by the defendants. (See Deft. Ex. 51B.)

56. Similar infringement notices dated October 10, 1956, containing language identical to that quoted in Finding 55, were sent to Adelman Laundry & Dry Cleaners, Polly Prim's National Laundry & Cleaners, Buckley Cleaners and Launderers, Spic and Span Shirt Launderers and Cleaners and American Laundry & Cleaner Supplies, Inc., all of Milwaukee, Wisconsin. (Deft. Ex. 50.)

57. I find that each of the foregoing letters, referred to in Findings 55 and 56, was sent in bad faith with an intent to create the erroneous impression that the validity of the Gerbe patent had been passed upon in an adversary proceeding, whereas in fact none of the actions com-

menced on the Gerbe patent had resulted in a litigated determination of validity.

58. The defendants have failed to prove that any other letters, advertisements, notices or signs employed by Wolf, Gerbe or Clearview were sent in bad faith with an intent to injure the defendants' business.

59. The defendants have failed to prove any conspiracy on the part of the plaintiffs and the additional defendant to monopolize the sale of bags to various industries.

60. The defendants have failed to prove any misuse of the Gerbe patent by Wolf or Clearview arising out of their sale of bags to the laundry and dry cleaning trades or the leasing out by them of bagging machines to purchasers of their bags.

### Discussion

■ As to the defendants' claim of unfair competition allegedly arising out of the various infringement notices in the form of circulars, letters, advertisements and signs employed by the plaintiffs and the additional defendant, the law is clear that it is not an actionable wrong for one having rights under a patent to assert in good faith, to whomsoever he will, that he intends to enforce what he conceives to be his legal rights. This is so even though he is mistaken concerning his rights. Kaplan v. Helenhart Novelty Corporation, 2 Cir., 1950, 182 F.2d 311; Bechik Products, Inc. v. Flexible Products, Inc., 2 Cir., 1955, 225 F.2d 603; Zoomar, Inc. v. Paillard Products, Inc., D.C.S.D.N.Y.1957, 152 F. Supp. 328, affirmed 2 Cir., 258 F.2d 527.

■ With the exception of the sign displayed by Tele-Sonic at the Chicago National Packaging Show and the Atlantic City Knitting Arts Show in April 1955, and the infringement notices dated October 10, 1956, sent on behalf of the additional defendant Clearview Packaging Company to various concerns in Milwaukee, Wisconsin (Deft. Exhibits 46, 50, 51A; Findings 36, 55, 56), I have concluded that the plaintiffs and the additional defendant acted in good faith to protect their interests in the Gerbe patent against those whom they believed to be infringers. It is immaterial that subsequent events have proven the plaintiffs and the additional defendant to be in error concerning the validity of their patent. Similarly, it is of no legal consequence that the defendants' business may in fact have been injured by infringement notices sent in good faith. Under these circumstances, no liability on the theory of unfair competition or otherwise can be predicated upon such infringement notices.

■ However, in my opinion, Tele-Sonic is liable to the defendants for any damages which may have been sustained by them as a result of the display at the Chicago and Atlantic City trade shows of the sign referred to in Finding 36. Judge Edward J. Dimock of this court, referring to this sign in his memorandum decision of August 9, 1955, stated:

"Defendant was referred to as 'a fraudulent copier of the patent.' These are strong words and they are not to be found in plaintiffs' complaint. They convey charges that go far beyond a charge that defendants' device is an infringement of plaintiffs' [patent]. Charges of malice and fraud are no part of a legitimate notice of claim of infringement. An unadorned notice is sufficient warning. The terms of reproach can have no purpose other than intimidation."

I have concluded that this sign was displayed in bad faith with intent to injure the defendants' business. Its use, therefore, constituted an actionable wrong.

Similarly, I have concluded that Clearview is liable to the defendants for any damages which may have been sustained by them as a result of the October 10, 1956, infringement notices sent to various firms in Milwaukee, Wisconsin. (Findings 55, 56.) These letters were obviously designed to create the impression that the validity of the Gerbe patent had been successfully litigated, whereas in fact none of the actions commenced on

the Gerbe patent had resulted in a judicial determination of validity. At least one of the concerns to whom this notice was sent distributed machines manufactured by the defendants. Clearview's attorney was informed of this by letter dated October 18, 1956 (Deft. Ex. 51B) but no attempt was made to correct the erroneous impression conveyed by the notice.

Misleading infringement notices of this sort are inconsistent with good faith on the part of the sender and have been held to constitute a species of unfair competition. See Price-Hollister Co. v. Warford Corporation, D.C.S.D.N.Y.1926, 18 F.2d 129; Remington Research, Inc. v. Modern Aide, Inc., D.C.S.D.N.Y.1959, 170 F.Supp. 7.

Accordingly, the defendants are entitled to a further hearing in this matter, limited solely to the issue of whether and to what extent their business was injured by the aforesaid sign and notices.

The defendants have failed to establish any conspiracy by the plaintiffs and the additional defendant to monopolize the sale of bags in the laundry and dry cleaning trades, nor, with the exceptions noted above, has any other misuse of the Gerbe patent by the plaintiffs or the additional defendant been shown. In my opinion, the various agreements between the plaintiffs and the additional defendant pertaining to the apportionment of rights under the Gerbe patent and the various policies adopted by Wolf and Clearview for supplying bag-distending devices in the laundry and dry cleaning trades were motivated by valid and lawful business considerations of the respective parties rather than by any scheme to monopolize or to lessen competition among bag distributors in the Mid-West or elsewhere.

While Title 35 United States Code Annotated, § 285, permits this court "in exceptional cases" to award reasonable attorney fees to the prevailing party in an action such as this, I do not believe that such an award would be proper here. It does not appear that this action was commenced in bad faith, that the action was vexatious or that the tactics of the plaintiffs and the additional defendant during the course of this litigation were unfair.

Conclusions of Law

1. The court has jurisdiction of the parties and subject matter of this cause.

2. Claims 1, 2, 3, 4, 5, 6 and 8 of the Gerbe patent No. 2,673,016 are void for anticipation by and lack of invention over the prior art.

3. The defendants are entitled to judgment dismissing the complaint with costs but without attorney fees.

4. The defendants under their first counterclaim are entitled to judgment declaring claims 1 through 6 and 8 of the Gerbe patent No. 2,673,016 invalid.

5. The defendants under their third counterclaim are entitled (a) to recover from Tele-Sonic such damages, if any, as they may have sustained by reason of the display of the sign, referred to in Finding 36 hereof; and (b) to recover from Clearview such damages, if any, as they may have sustained as a result of the letters dated October 10, 1956, referred to in Findings 55 and 56 hereof.

6. Except to the extent heretofore expressly provided, defendants' counterclaims should be dismissed.

The parties are directed to appear on April 1, 1959, at 10:30 A.M. in room 1306 for further proceedings in accordance with this opinion.