**MONAPLASTICS, INC., William C. Monahan**

v.

**CALDOR, INC.**

**Civ. No. 10906.**

United States District Court
D. Connecticut.

Nov. 4, 1966.

Armand Cifelli, Garold E. Bramblett, Jr., Wooster, Davis & Cifelli, Bridgeport, Conn., for plaintiffs.

Roger B. McCormick, McCormick, Paulding & Huber, Hartford, Conn., William S. Rambo, Mahoney, Miller & Rambo, Columbus, Ohio, for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT AND TO AMEND COMPLAINT

BLUMENFELD, District Judge.

This is a suit for infringement of U. S. Patent No. 3,160,361 entitled "Unitary Paper Towelling Rack" made entirely of polypropylene. The patent was applied for on August 21, 1962, and on December 8, 1964, it was issued to William C. Monahan, who assigned it to the plaintiff. The defendant pleaded invalidity of the patent as an affirmative defense and has also counterclaimed for a declaration of invalidity and noninfringement. It now moves for summary judgment on the ground that the patent in issue is invalid because it fails the test of nonobviousness under 35 U.S.C. § 103.

This court has jurisdiction of this suit under the patent laws of the United States. 35 U.S.C. §§ 271, 281 and 28 U.S.C. § 1338.

### I.

The invention is a simple device, easily understood without benefit of technical experience. As described by the inventor pursuant to 35 U.S.C. § 112:

"Th[e] invention generally pertains to wall-mounted supports for articles in the form of rolls of sheet material, such as paper, and particularly to paper towelling racks.

"It is a common sight in the average kitchen to see a wall-mounted paper towelling rack for supporting rolls of paper towelling. Most known paper towelling racks are formed of metal, as by being stamped, or of [nonmetallic] plastic materials, as by being molded. The field is highly competitive, and heretofore, plastic racks have been extremely popular. However, all known plastic racks are formed of a plurality of components which are individually molded and assembled into a completed rack. Furthermore, all such known plastic racks include conventional hinging structures, including hinge pins, for individually hingedly connecting the usual spaced

arms of the rack which support the rolls to the usual back plate of the rack which, in turn, is employed to mount the entire rack on a wall. * * *

* * * * * *

"The object of the invention is accomplished in one form by providing a molded plastic paper towelling rack in the form of a unitary structure that can be molded in one piece in its final form.

* * * * * *

"One of the important features of the invention which permits the entire rack to be formed in a single piece is that of providing hinges between the arms and back plate in the form of hinge webs * * * that can be integrally formed with the entire rack by molding plastic materials. It has been found in practice that unitary racks having integral hinge webs may be conveniently formed ·by known injection molding techniques utilizing polypropylene as the plastic material. * * * *"

Another important feature he stresses is the flexibility of the arms permitting them to be forced apart sufficiently to permit changing rolls of paper towelling. And finally, he emphasizes that the hinge permits the arms to be folded inwardly, to lie flat on the back plate, making for economy in packaging and shipping.

*Applicability of Summary Judgment*

▪ Despite earlier cases denying the use of summary judgment to resolve the validity of a patent, it is now widely recognized that summary judgment may be entered under Rule 56 in a patent case where appropriate. "There is no special rule for patent cases." Allen v. Radio Corp. of America, 47 F.Supp. 244, 246 (D.Del.1942); 6 Moore, Federal Practice ¶ 56.17(44) at 2613 (3d ed. 1965).

In sustaining a summary judgment holding a patent invalid on the ground of its "obviousness" under 35 U.S.C. § 103, it was pointed out that:

"Summary judgment represents a most useful legal invention to save time and expense, by the avoidance of a trial, when there exists no material fact-issues. It may well be that, in a patent case, a judge should exercise unusual caution in granting a summary judgment. But there are patent cases where it would be an absurd waste of time and effort to deny such a judgment." Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9, 10 (2d Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956).

·II.

The movant in this case argues that the patent in issue is invalid within the meaning of § 103 [1] in "that the differences between the subject matter claimed ·in the patent and the prior art . . . are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

The formula by which nonobviousness of subject matter is to be tested was recently outlined by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), as follows:

"[1] [T]he scope and content of the prior art are to be determined;

[2] differences between the prior art and the claims at issue are to be ascertained; and

[3] the level of ordinary skill in the pertinent art [is to·be] resolved.

[4] Against this background, the obviousness or nonobviousness

---

I. 35 U.S.C. § 103 provides:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

· of the subject matter is determined."

### The Prior Art

■ It should be borne in mind that the patent is for a one-piece paper towel rack molded from nonmetallic plastic, rather than for the process by which it is made, or for the polypropylene from which it is made. Indeed, since the inventor said in his own words when he applied for this patent, "it is a common sight in the average kitchen to see a wall-mounted paper towelling rack for supporting rolls of paper towelling," one might be tempted to say off-hand that his towel rack, while "new and useful," is not "invention" or "discovery" under 35 U.S.C. § 101. See Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90–92, 62 S.Ct. 37, 86 L.Ed. 58 (1941); (adhered to in Graham v. John Deere Co., supra, 383 U.S. at 15, 86 S.Ct. 684). In addition to this disclosure by the patentee, there was more definitive prior art providing a basis for the application of § 103. That section requires that the prior art teachings be evaluated as a whole.

> "Where a patent includes a combination of elements, it is not necessary to establish anticipation that all of the elements be found in a single earlier patent or in a single device previously in general use. It is enough if the evidence, taken as a whole, discloses that all the claimed elements are found in different prior patents in the art or in different devices previously in general use, *and no new functional relationship arises from their combination.*" Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 87 F.2d 26, 28 (10th Cir. 1936) (Emphasis added).

Fairchild v. Poe, 259 F.2d 329, 332 (5th Cir. 1958); Tele-Sonic Packaging Corp. v. Errich International Corp., 173 F. Supp. 335, 342 (S.D.N.Y.1959).

The prior art patents can be summarized briefly. The Krueger patent, U.S. Patent No. 2,222,951, issued November 26, 1940, was for a "Bracket for Dispensing Rolls." According to the patent, it was "particularly adopted for supporting a roll from which paper toweling or the like is dispensed * * *." It disclosed a unitary structure for it was formed "integrally of sheet metal" which is a plastic substance. See Cornell v. Chase Brass & Copper Co., 142 F.2d 157, 159 (2d Cir. 1944). The device employed arms to be sprung apart to receive the roll which was to be dispensed. While Krueger may not be a complete anticipation because presumably it was shaped from metal by a stamping machine with suitable dies rather than molded from thermoplastic polypropylene, it did teach a one-piece towel rack used to perform substantially the same functions in substantially the same way as the subject matter of the patent in suit.

The Mayer patent, U. S. Patent No. 3,038,676, issued June 12, 1962, discloses a towel roll holder made entirely of moldable nonmetallic plastic material by injection molding. This is made in three parts, a back plate and two arms. The arms are interchangeable and are easily snapped into place in the process of assembly. Holes in the top and bottom flange of the arm fit over pins integral with the back bar. It is obvious that the arms can be turned inwardly on these hinges to permit economical packaging.

The foregoing patents were considered by the Patent Office but the following prior art was not.

The Perelman design patent, U. S. Patent No. 161,199, issued December 12, 1950, claims the design of an all-plastic towel rack with metal hinge pins.

The Dolezal patent, U. S. Patent No. 2,746,087, issued May 27, 1956, teaches a method of manufacturing a frame for spectacles as an integral unit from polymer and cold-working a portion of each temple at the rim, whereby molecular orientation in said portions is effected and their strength and resiliency is increased, so that said portions provide sufficient strength and resiliency to cause

**61**

the temples to grip the head of the wearer, and to permit the temples to be folded inwards to a susbtantially flat position when out of use.

It is significant that before Monahan applied for his patent, the plastics industry had been widely and comprehensively informed of the principles, properties, basic design and molding techniques of Monahan's principal claim—the application of the polypropylene hinge to the manufacture of a unitary paper roll towel rack. A description in a printed publication prior to the date of the applicant's invention is part of the prior art. 35 U.S.C. § 102(b). An article in a trade magazine, Materials in Design Engineering, October 1960, entitled "The Polypropylene Hinge: Long Life at Low Cost" explained "how it works * * * how to design one * * * and some outstanding examples of successful use." "The Molded-In Hinge in Polypropylene Components" is another article published as the Engineer's Report in the May 1961 issue of Plastics World. This article by Russell D. Hanna * explains in detail how to make "the integral molded-in hinge of virtually unlimited flex life * * *." The article illustrates the use of the hinge in a unitary safety-glass case and a phonograph record carrying case.[2] In addition, a molded polypropylene hinge was then in use in a surgical tubing clamp, in an air filter clip, and as an integrated hinge for louvers in automobile air conditioners. The article continues, "Now, in advance stages of design development or mold construction are such items as cosmetic cases, lunch boxes, luggage and business machine cases, etc." It goes on to list all the advantages of the polypropylene hinge.

Mr. Monahan, the president and a shareholder in Monaplastics, has been engaged in the business of molding plastics for others for more than twenty years. His deposition reveals that in 1958 and 1959 during the course of carrying on his business he learned of the availability of polypropylene from several large manufacturers who were marketing it [3] and from articles in Plastics World, in Modern Plastics, and in an engineering society publication, all of which he read regularly. He read the articles referred to above and he saw samples of a file card box with a molded-in hinge made by Enjay Chemical Co.[4]

While it does not matter that Monahan knew of polypropylene as a compound suitable for injection molding, cf. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965), it is clear enough that it was widely known in the industry. The integrated web hinge was already a full blown concept before Monahan thought to apply it in a paper towel holder and all the questions of how to make it had been fully answered. This knowledge cannot be said to be concerned only in a peripheral manner with the claimed invention. The published developments in the uses of polypropylene had already reached the stage where such a strong feed-back into the industry was in effect as to readily suggest the use of the integrated web hinge in a paper towel rack.

### III.

There is not the least doubt that if inventions to be patentable must "promote the Progress of Science and useful Arts" (U.S.Const. art. I, § 8) Monahan has missed the mark by a wide margin. He did not conceive the idea of a paper

---

* Plastics Technical Supervisor, Hercules Powder Co.

2. The defendant was producing this "Platter Porter" in 1959 and 1960.

3. Monahan testified that he first learned of polypropylene as a plastic molding material around 1958 or 1959 from several

companies whose representatives called on him. He listed Hercules, Enjay Chemical Co., Sun Oil Co., and Shell Chemical Co.

4. Presumably, the one illustrated on page 12 of the May 1961 issue of Plastics World.

towel holder, nor of fabricating one in a single piece. He did not discover polypropylene or its moldable characteristics; whatever advantages it possessed for use in making a paper towel holder had been fully expounded in trade publications and by the companies who sold it.

It was not invention to substitute polypropylene plastic for the metal used by Krueger,[5] Magnus Harmonica Corp. v. Lapin Products, 236 F.2d 285 (2d Cir. 1956); Griffith Rubber Mills v. Hoffar, 313 F.2d 1 (9th Cir. 1963), even if Mayer had not already done that, nor to make the holder in one piece of plastic instead of three. Magnus Harmonica Corp. v. Lapin Products, supra; Griffith Rubber Mills v. Hoffar, supra; General Electric Co. v. Yost Electric Mfg. Co., 139 F. 568, 570 (2d Cir. 1905); cf. Manzel v. Houde Engineering Corp., 25 F.Supp. 40, 44 (W.D.N.Y.1938). While the hinge web served to integrate Monahan's holder into one piece, it did not result in any new or different function for the holder. See Packwood v. Briggs & Stratton Corp., 195 F.2d 971, 973 (3d Cir.), cert. denied, 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657 (1952). What resulted was no more than the predictable sum of its parts. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), where the Court said: "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." The difficulties facing a claim for patentable invention seem to be further compounded if one examines another part of the prior art. Monahan's patent was not for the material or the method of making the holder. All the instruction needed in those respects had already been spread throughout the plastic molding industry by trade journals.

■ Although attention must be paid to the statutory presumption of validity given to the plaintiff by 35 U.S.C. § 282, it is weakened where the relevant prior art was not considered by the Patent Office. As pointed out in Monroe Auto Equipment Co. v. Superior Industries, Inc., 332 F.2d 473, 481 (9th Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 175 (1964), " * * * one pertinent[11] example of unconsidered prior art is not only sufficient basis to dissipate the presumption of validity [cases and n. 11 omitted], but may render the patent invalid." Neither of the publications referred to above were cited by the Patent Office in the file of the patent in suit. At best,

"The presumption of validity relieves the patent holder of the burden of establishing that validity as a requisite for the successful maintenance of an infringement action, and places the burden of establishing invalidity on the alleged infringer who asserts it. International Carrier-Call & Television Corp. v. Radio Corp. of America, 142 F.2d 493, 495 (2d Cir. 1944); Western States Mach. Co. v. S. S. Hepworth Co., 147 F.2d 345, 348 (2d Cir.), cert. denied, 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991 (1945). More than that, the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder. See Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). The statute does not require that the presumption be accorded the weight of actual evidence or that the use of the presumption should affect a decision of invalidity that would otherwise be reached with confidence. This court has recognized the unavoidable obstacles to an accurate and impartial decision that are inherent in *ex parte* proceedings in the patent office, Guide v. Desperak, 249 F.2d 145, 148 (2d Cir. 1957). We cannot properly allow de-

---

5. "A change of material should not give title to a patent. As the making a ploughshare of cast rather than of wrought iron; a comb of iron instead of horn or ivory * * *." VI Writings of Thomas Jefferson (Washington ed.) 181 (1914) Quoted in Graham v. John Deere Co., supra, 383 U.S. at 10, n. 3, 86 S.Ct. at 690.

·cisions of that office to alter the preponderance of the evidence on the question of validity.[6]  See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 156, 71 S.Ct. 127, 95 L.Ed. 162 (1950); In re Thomson, 26 App.D.C. 419, 425 (1906); cf. Lyon v. Boh, 1 F.2d 48 (S.D.N.Y.1924) (L. Hand, J.), rev'd, 10 F.2d 30 (2d Cir. 1926).[7]" Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir. 1962) (nn. 6 and 7 omitted).

Gross v. JFD Mfg. Co., 314 F.2d 196, 198 (2d Cir.), cert. denied, 374 U.S. 832, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963).

In Graham v. John Deere Co., supra, 383 U.S. 1, 86 S.Ct. 684, the Supreme Court thoroughly canvassed the history of § 103 and made it clear that the presence of a claim of obviousness under § 103 requires a court to test with severity the patentability of an alleged invention. Taking note of the advances of technology and the expanding "ambit of applicable art in given fields of science," the Court cautioned against applying a relaxed standard to affirm Patent Office decisions:

> "It is but an evenhanded application to require that those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions.  The same is true of the less technical, but still useful arts.  He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office."  Id. at 19, 86 S.Ct. at 695.[6]

There is no genuine issue as to any material fact taken from the pleadings, depositions, exhibits, and other papers in this case relating to the prior art and the level of ordinary skill in the pertinent art.  Whatever differences there may be between the plaintiff's "Unitary Paper Towelling Rack" and the pertinent prior art these are so minimal that it must be said as a matter of law they would have been obvious at the time to a person having ordinary skill in the art. See 35 U.S.C. § 103.  Graham v. John Deere Co., supra, 383 U.S. at 14, 86 S.Ct. 684; Walker v. General Motors Corp., 362 F.2d 56, 149 U.S.P.Q. 472 (9th Cir. 1966).

A further point should be settled. It is suggested that the pleadings and deposition of Monahan reveal the existence of a disputed factual claim by the plaintiff that Monahan's invention antedated some of the prior art presented to the court.  The date the application for a patent was filed is presumed to be the date he made his invention.  Hann v. Venetian Blind Corp., 21 F.Supp. 913, 915 (S.D.Calif.1936), aff'd, 111 F.2d 455 (9th Cir. 1940).

Nothing has been shown or offered to rebut that presumption.  The defendant's notice to take the deposition of Mr. Monahan, president and principal officer of the plaintiff Monaplastics, Inc., requested him to bring with him and produce "drawings, models, written descriptions and other documentary evidence upon which plaintiff relies, or intends to rely, to show conception and reduction

---

6.  The Supreme Court has also required a strong showing of "invention" or "discovery" under 35 U.S.C. § 101:

"Strict application of that test [of invention] is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art. The consequences of the alternative course were forcefully pointed out by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438: 'Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention.  It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts.  It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith.'"  Cuno Eng'r Corp. v. Automatic Devices Corp., supra, 314 U.S. at 92, 62 S.Ct. at 41.

to practice of the alleged invention involved in the patent in suit." None of these were brought by him, nor were they produced upon request at the time of his deposition. He repeatedly professed an inability to recall either the date of conception or reduction to practice of his invention. His answers to questions calculated to elicit the existence or character of any records or other evidence relating to those dates were consistently evasive. The rule is that,

" 'When an inventor's date is to be carried back beyond his application, courts regard the effort with great jealousy, and must be persuaded with a certainty which is seldom demanded elsewhere; quite as absolute as in a criminal case, in practice perhaps even more so. * * * It makes no difference how the question arises; whether the patentee is carrying back his own invention, or a supposed infringer is carrying back his; the burden is the same as the proof necessary to establish a prior use.' United Shoe Mach. Corp. v. Brooklyn Wood Heel Corp., 77 F.2d 263, 264 (2 Cir. 1935). Another fundamental principle in this area is that a pre-filing date of invention may not be established by the inventor's uncorroborated testimony alone. Thompson v. American Tobacco Co., 174 F.2d 773 (4 Cir. 1949); Oliver Machinery Co. v. Gellman, 104 F.2d 11 (6 Cir.), cert. denied, 308 U.S. 567, 60 S.Ct. 80, 84 L.Ed. 476 (1939)." Rooted Hair, Inc. v. Ideal Toy Corp., 329 F.2d 761, 767 (2d Cir.), cert. denied, 379 U.S. 831, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964).

■ Although the plaintiff may have been within its rights in not producing the items of documentary and other evidence requested by the notice of deposition, see Shenker v. United States, 25 F.R.D. 96, 99 (E.D.N.Y.1960), it cannot on the other hand rely upon such withheld evidence, if any there be, as a basis for claiming the presence of a disputed issue of material fact so as to defeat summary judgment. Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2d Cir. 1943).

Since the lack of validity of the claimed invention is dispositive of the case as it now stands, there is no need to reach the issue of infringement. Nor is there any just reason for delay in entering judgment. Let judgment enter declaring that United States Patent No. 3,160,361 is invalid under the provisions of 35 U.S.C. § 103. Rule 54(b) Fed.R. Civ.P.

### IV.

#### The Motions to Amend

■ To clarify subsequent proceedings, I now turn to a collateral point introduced into the case by the plaintiff. After the motion for summary judgment had been filed (April 7, 1966) the plaintiff moved on May 10, 1966, to add William C. Monahan as a party plaintiff. The original complaint alleges that he had previously "assigned to the plaintiff by a written instrument all of his right, title and interest in said patent." At the time of Monahan's deposition, he answered that he had done so and again refused to produce the written instrument by which that had been done. While he also testified that he and the members of his family own all of the stock in Monaplastics, Inc., that is only euphemistic support for the allegation in the plaintiff's motion that, "He has certain undeniable interests and rights in the patents at issue, as well as their adjudication in this litigation." Nothing but confusion of the pleadings and further unwarranted delay could result from making Mr. Monahan a party. In view of my holding that the patent is invalid and Mr. Monahan's participation in the case as the principal witness and the inventor,[7] the issue of his presence

---

7. It was abundantly clear that plaintiff's counsel was representing the interest of Mr. Monahan as well as that of the corporation controlled by him.

as a formal party is moot insofar as claims based on Patent No. 3,160,361 are concerned.

The plaintiff also moved on April 19th to amend its complaint by adding a second count alleging the defendant's infringement of Design Patent No. 199,-516, entitled "Paper Towel Holder." This patent was assigned to the plaintiff by the patentee William C. Monahan on or about April 13, 1966, shortly after the motion for summary judgment had been filed. This design patent had been issued to Monahan on November 10, 1964, a date earlier than the issuance of the utility patent (December 8, 1964). In opposing the motion the defendant argues that Monahan and his apparently controlled corporation could have arranged for the assignment before the present suit was instituted and this belated claim will result in duplication of pre-trial discovery which could have been done at the same time. However, there is no requirement that their affairs must be so orderly arranged either for the benefit of the defendant or the court. It appears that Monahan was the owner of the design patent for a considerable part of the time during which the defendant is accused of having infringed it and that no pleadings have been filed or other steps taken toward the litigation of the claim alleged in the proffered second count.

The motion for leave to amend the complaint by adding a second count claiming infringement of the design patent is granted.

Since it does not yet appear that Monahan retained any interest in the design patent after he assigned it to the plaintiff, I will treat the plaintiff's motion to add William C. Monahan as a party plaintiff as a motion by him to join as a party plaintiff under Rule 20 for the purpose of asserting under the second count a several right to relief arising out of the same series of occurrences in which there is a common question of law or fact. To that extent, the motion is granted.